Philip SULLIVAN and Charlotte Sullivan, Plaintiffs,

v.

James HYLAND, Maryanne Delisa, Gregory Zigmont, Charles Coffey, Terri Sonneman, and John Malone, Defendants.

No. 3:08–cv–00471 (CSH)(JGM).

United States District Court, D. Connecticut.

Aug. 12, 2009.

Philip Sullivan, West Hartford, CT, pro se.

Charlotte Sullivan, West Hartford, CT, pro se.

Edward G. McAnaney, McAnaney & McAnaney, Suffield, CT, Julie A. Harris, Noble, Spector, Young & O'Connor, Robert J. Deichert, Attorney General's Office, Hartford, CT, for Defendants.

## *MEMORANDUM OF DECISION AND ORDER*

HAIGHT, Senior District Judge:

This case comes before the Court to review several recommended rulings by Magistrate Judge Margolis: the Recommended Ruling of November 21, 2008 [doc. # 39, hereinafter "First Recommended Ruling" or "R.R.1"] on the Defendants' Motions to Dismiss [docs. ## 21, 24, 26]; the Recommended Ruling of November 25, 2008 [doc. # 40, hereinafter "Second Recommended Ruling" or "R.R.2"] on Defendant Hyland's Motion for Injunction [doc. # 30] and the Plaintiffs Philip and Charlotte Sullivan's Motion to Strike the same [doc. # 36]; and the Recommended Ruling of February 6, 2009 [doc. # 55, hereinafter "Third Recommended Ruling" or "R.R.3"] on Defendant Maryanne Delisa's Motion for Preliminary Injunction [doc. # 50] and Plaintiffs' Motion to Strike the same [doc. # 48].[1]

This case was originally assigned to another district judge in this judicial district, the Honorable Janet Bond Arterton, and the case was reassigned to me while the referral to Judge Margolis was pending.

## I. Introduction

### A. Background

This case has its genesis in a domestic dispute, where plaintiffs were ejected from their home of many years after a dispute with their landlord,[2] who also happened to be plaintiff Philip Sullivan's mother. That removal gave rise to a criminal complaint against Philip Sullivan on eavesdropping charges. The case was dismissed after the chief witness—again, Philip Sullivan's mother—passed away, and pretrial testimony was therefore excluded under the hearsay rule. In addition to a landlord-tenant lawsuit in Connecticut state court (*Sullivan I*) the Sullivans have brought a

---

1. For the sake of consistency, this Memorandum of Decision also adopts the same "hereinafter" references, short forms, and abbreviations used by Judge Margolis in her First Recommended Ruling.

2. I use the term "landlord" loosely, since an entry and detainer lawsuit brought by the Sullivans conclusively determined that the Sullivans were not, in fact, tenants at this location at any time within the legal meaning of that word. *See* Memorandum of Decision, *Sullivan I*, 2004 WL 5354050 (Conn.Super. June 10, 2004) (dos Santos, J.), *aff'd*, 101 Conn.App. 605, 923 A.2d 760 (2007); *Judge Kravitz's Summary Judgment Opinion, Sullivan III*, 487 F.Supp.2d 52, 64 (D.Conn.2007).

state probate action (*Sullivan II*) and a federal lawsuit to recover damages for perceived violations of their civil rights (*Sullivan III*). In all those lawsuits, the Sullivans sued several family members, and in the federal action under 42 U.S.C. § 1983, they also sued private attorneys and numerous officials of the State of Connecticut, including police investigators, prosecutors, and judges, at least some of whom the Sullivans believe conspired with their family members to deprive them of their constitutional rights.

According to plaintiffs,

[t]he current action which is labeled by the court as *Sullivan IV* ... was brought by Plaintiffs because in *Sullivan III*, as appears of record, Plaintiffs were denied their due process opportunity to amend their complaint [in] September, 2005 to include said claims [for false arrest and malicious prosecution] AFTER the state criminal action was dismissed in Plaintiff Philip Sullivan's favor April 1, 2005 for total lack of evidence.

Pls.' Obj'n to R.R.2, Doc. # 43, at 7 (emphasis and footnote omitted).[3]

In other words, plaintiffs' purpose in the captioned action, *Sullivan IV*, is to obtain relief from *Judge Kravitz's Joinder Ruling* in *Sullivan III*, which denied them leave to reinstate certain claims and defendants and to introduce additional claims against those defendants.

## B. Standard of Review

As required by Federal Rule of Civil Procedure 72(b)(3), where timely objections are raised to a recommended ruling by a magistrate judge on a dispositive motion, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b)(3).

## C. Prior Proceedings

This case has a long and tortured history, and the parties' familiarity with the facts and procedural posture is presumed. After at least two actions in Connecticut state court, these same plaintiffs filed a sweeping lawsuit in this Court. *See* Complaint, *Sullivan v. Stein* ["*Sullivan III*"], No. 3:03–cv–1203 (MRK) (filed July 10, 2003). The decisions reached in that case form the basis of defendants' preclusion arguments in the case at bar. *See Judge Kravitz's Ruling*, 2004 WL 1179351, 2004 U.S. Dist. LEXIS 9438 (D.Conn. May 21, 2004) (granting plaintiffs' motions to amend certain claims in their complaint; dismissing claims against the large majority of defendants on grounds of prosecutorial, judicial, or Eleventh Amendment immunity for most state defendants, and failure to state a claim under federal law against the private defendants; and declining to exercise supplemental jurisdiction over state law claims); Ruling and Order, 2004 WL 2750312 (D.Conn. Nov. 18, 2004) (denying plaintiffs' multiple Motions for Reconsideration); *Judge Kravitz's Joinder Ruling*, 2005 WL 465425, 2005 U.S. Dist. LEXIS 2840 (D.Conn. Feb. 7, 2005) (denying leave to add defendant prosecutor John Malone because such joinder would be futile, because claims against him would be barred on grounds of prosecutorial immunity; denying leave to amend the complaint to revive

---

**3.** Plaintiffs make frequent use of boldface type and italics in their briefs. When quoting their briefs throughout this opinion, I often omit their emphases without further annotations, so as not to distract from the substance of their arguments.

claims against most defendants under §§ 1983 & 1985(3), because the proposed amendments failed to cure defects previously identified; but granting leave to amend the complaint to add claims under § 1983 against defendant inspectors Zigmont and Coffey, in their individual capacities); Ruling and Order, 2005 WL 977069 (D.Conn. Apr. 19, 2005) (denying plaintiffs' Motions for Order of Certification of Immediate Appeal and for Stay Pending Determination by Second Circuit); Ruling and Order, 2005 WL 2209301 (D. Conn. Sep. 12, 2005) (denying defendants Zigmont and Coffey's renewed motion to dismiss, and permitting claims against those defendants to proceed); Memorandum of Decision, No. 3:03–cv–1203 (MRK), Doc. #250 (D.Conn. Sept. 29, 2005) (denying leave to reinstate claims previously dismissed against private and state defendants—leave was sought based on dismissal and expunction of the criminal case against Philip Sullivan and the Court's recent decision not to dismiss a limited set of claims); *Judge Kravitz's Reconsideration Ruling,* 2007 WL 1114028 (D.Conn. Apr. 10, 2007) (denying leave to amend and reinstate claims against private defendants, after repeated attempts to do so that were dismissed for insufficient pleading); *Judge Kravitz's Summary Judgment Ruling,* 487 F.Supp.2d 52 (D.Conn. 2007) (granting defendants' motions for summary judgment on all remaining federal claims under § 1983; denying those motions as to the remaining state-law claims; but declining to exercise supplemental jurisdiction over the remaining state-law claims and therefore dismissing them for lack of jurisdiction).

In her First Recommended Ruling [doc. # 39], Judge Margolis prepared a comprehensive narrative of the factual and legal history in these matters, which I adopt as my own and incorporate by reference. *See* R.R.1 at 3–8.[4]

### D.  Subsequent Proceedings

Since the time that Judge Margolis issued her Recommended Rulings, one other change has occurred in the procedural posture of matters related to the case at bar. On April 3, 2009, the Second Circuit summarily affirmed Judge Kravitz's judgment in *Sullivan III,* which was based on the many opinions already cited *supra.* The Second Circuit provided no discussion, except that it affirmed "for substantially the reasons stated by the district court in its thorough opinions. We have considered all of the Sullivans' arguments and find them to be without merit." *Sullivan v. Stein,* 319 Fed.Appx. 42, 43 (2d Cir.2009) (unpublished summary order).

### II.  The First Recommended Ruling: Defendants' Motions To Dismiss

### A.  Standard of Review

The standard of review on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is familiar, although recent modifications by the Supreme Court have made it less permissive in some cases.[5] A motion to dismiss under Rule 12(b)(6) must be decided on "facts stated on the face of

---

4.  One of the plaintiffs' objections to Judge Margolis's First Recommended Ruling is that her summary of that history is factually inaccurate. *See* Pls.' Obj'n to R.R.1 [doc. # 41] at 7–11. Because I conclude that plaintiffs' objections are without merit, *see infra,* I adopt her factual summary as my own.

5.  Judge Margolis did not mention the recent modifications to this standard, embodied by *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and its progeny. But even if she applied the previous, more permissive, standard of review, she nevertheless recommended dismissal of these claims. Thus, applying a more exacting standard does not affect the result.

the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [ ] matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999) (citation omitted). In particular, because this case turns on facts that have been the subject of several prior actions, it is proper and indeed incumbent upon this Court to take judicial notice of the opinions in those prior cases. *See Chien v. Skystar Bio Pharm. Co.*, 623 F.Supp.2d 255, 260 n. 3 (D.Conn.2009) ("[I]n considering a *res judicata* defense, a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court.").[6]

In deciding a motion to dismiss, well-pleaded facts must be accepted as true and considered in the light most favorable to the Plaintiff. *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir.2007). The issue in deciding a motion to dismiss is "not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). The factual allegations made in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This requires the complaint to contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the plaintiff's claim. *Id.* at 556, 127 S.Ct. 1955. "[A] complaint must contain suffi-

cient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (citing *Twombly*; internal quotation marks omitted; emphasis added). The Court has distinguished between factual pleadings and conclusory allegations, stating that when "bare assertions ... amount to nothing more than a formulaic recitation of the elements" of a claim, then "the allegations are conclusory and not entitled to be assumed true." *Id.* at 1951 (citing *Twombly*; internal quotation marks omitted).

## B. Plaintiffs' Factual Objections

Plaintiffs identify the following alleged "misstatements of facts as to various court decisions," which they claim "lack any sense of fundamental fairness or a fair hearing and are prejudicial to Plaintiffs...." Pls.' Obj'n to R.R.1 at 7.

**Item A.** The first of these alleged "misstatements" is that the Recommended Ruling "perhaps unknowingly mis-states the nomenclature of Plaintiffs' state entry & detainer action...." *Id.* Apparently, plaintiffs quibble with the fact that Judge Margolis included a citation to a state court opinion regarding an application for a prejudgment remedy, 2002 WL 523076 (Conn.Super. Jan. 10, 2002) (Crawford, J.), which was affirmed on an interlocutory appeal, 74 Conn.App. 902, 814 A.2d 441 (2002), rather than the final Memorandum

---

**6.** Because this opinion has not yet been published in an official reporter, a copy of the Westlaw version will be transmitted in the copy of this Memorandum of Decision that is sent to plaintiffs, in accordance with the Second Circuit's suggestion in *Lebron v. Sanders*,

557 F.3d 76 (2d Cir.2009). The same will apply to all other unpublished opinions cited herein, except those that would already have been provided to plaintiffs during the course of their prior litigation (such as the numerous unpublished opinions in *Sullivan III*).

of Decision on the merits after a bench trial, 2004 WL 5354050 (Conn.Super. June 10, 2004) (dos Santos, J.), which was affirmed on final appeal by the Appellate Court, 101 Conn.App. 605, 923 A.2d 760 (2007). Because Judge Margolis explicitly based her factual summary on the Appellate Court's opinion on final appeal, it is clear her citation to the non-final opinion was provided for the reader's convenience, and this objection is without merit. Plaintiffs also claim that in its final (2007) decision, upon which the Recommended Ruling relies, the Connecticut Appellate Court misstated the date of decision for one of the opinions below. Pls.' Obj'n to R.R.1 at 8. Regardless of whether plaintiffs are correct in that assertion,[7] the fact is wholly immaterial to the facts and chronology upon which Judge Margolis relied in her Recommended Ruling. That objection, too, is without merit.

**Item B.** Similarly, plaintiffs object that Judge Margolis "mis-states and attributes to Judge Sheldon" a certain recitation of facts: [8]

> *Nowhere* in Judge Sheldon's ruling, including at ID*2, does he make the above statements, presumably because they are LIES promoting and fabricating FALSE evidence.... The misstatement from the recommended ruling is a Continuation of the *cumulative misrepresentations of facts* which these Plaintiffs have been subjected to over the past eight years.

Pls.' Obj'n to R.R.1 at 8. In fact, as Defendant Hyland's memorandum points out, Judge Margolis was simply paraphrasing Judge Sheldon's ruling in the criminal matter against Philip Sullivan. This objection has no merit.

**Item C.** Plaintiffs object to Judge Margolis's citation to a 2007 opinion when describing an event that was the subject of a ruling in 2005, "[r]aising the question why the magistrate did not seek out the district court's Sept 29, 2005 ruling ... as it rushed to do with others?" Pls.' Obj'n to R.R.1 at 9. This objection does not even offer a genuine factual challenge. It is without merit.

**Item D.** This item raises a legal argument addressed elsewhere, namely, whether or not the plaintiffs' claims for false arrest were available prior to the dismissal of the criminal matter against Philip Sullivan, and if not, whether that fact would resuscitate claims against certain defendants that had already been dismissed prior to the termination of the criminal matter. Because this argument is legal, and not factual, I address it later.

**Item F** [*sic*]. This item raises another legal argument: plaintiffs disagree with Judge Margolis's assessment that their abuse-of-process claim fails, independent of preclusion arguments, because plaintiffs have not pleaded how defendants misused legal process. Perhaps in an effort to remedy any such deficiency, they also recapitulate certain facts from their pleadings. Because this argument is not factual in nature, it is also addressed below.

## C. Plaintiffs' Legal Objections

Aside from their factual objections, described above, plaintiffs lodge several objections against the legal reasoning in Judge Margolis's First Recommended Rul-

---

7. Defendant Hyland offers a convincing explanation: the court was simply referring to a later decision that incorporated the earlier one. *See* Def. Hyland's Mem. [doc. # 44] at 4–5.

8. Judge Sheldon was the Connecticut Superior Court judge in the criminal action against Philip Sullivan. It was his decision to dismiss that case after the chief witness, Philip Sullivan's mother, passed away.

ing. The bulk of that ruling held that all of plaintiffs' claims must be dismissed as precluded by claim or issue preclusion. Judge Margolis also held that apart from any preclusion that might apply, certain claims would fail as a matter of law, for insufficient pleading.[9] Those deficiencies in pleading might theoretically be curable in an amended pleading. But plaintiffs' preclusion bar cannot be cured, because every single federal claim in this suit *could have been raised* in *Sullivan III*. Therefore, I rest my holding in this case on preclusion.

### 1. Federal Claims Under § 1983

As I discuss in greater detail below, plaintiffs hope to escape the preclusive effect of their previous lawsuit in *Sullivan III* by arguing that this case brings new, different claims from those raised previously.[10] *See* Pls.' Obj'n to R.R.1 at 2 ("*Sullivan III did not allege* false arrest, retaliatory malicious prosecution or abuse of process in the absence of probable cause.... Plaintiffs' ... motion to include said defendants and claims *was denied* ...." (footnote omitted)); *id.* at 5–7 (arguing again that *Sullivan III* "did not include claims of false arrest, retaliatory malicious prosecution and abuse of process," and repeatedly stating that *Sullivan III*

was not based "on the same claims brought to this court").

But even if I assumed for the purposes of argument that plaintiffs have brought *some* new claims that were not, and could not, have been brought in *Sullivan III*, that still would not prevent dismissal of this lawsuit, because all of the plaintiffs' underlying *federal* claims are ones which either were brought or could have been brought in their previous action. Moreover, they have not cured—indeed, it would seem that they cannot cure—the deficiency that led to the dismissal of the same claims in *Sullivan III*. Given that shortcoming, I see no reason to exercise federal jurisdiction over a case where all of the federal claims must be dismissed as being precluded.[11] .

The only *federal* causes of action asserted in this complaint, against any defendant, are for damages stemming from violations of the plaintiffs' constitutional rights, under 42 U.S.C. § 1983. In *Sullivan III*, the complaints alleged at various times § 1983 violations of rights under a broad range of theories and constitutional amendments. While the primary thrust of plaintiffs' *pro se* complaint was to allege violations of equal protection and due process, the *Sullivan III* complaint also alleged, *inter alia*, violations of the right

9. See, for example, Judge Margolis's discussion of the shortcomings in plaintiffs' claim for abuse of process, in R.R. 1 at 25–26. That is the analysis to which plaintiffs have objected in their "Item F," *supra*. I ultimately decline to adopt this portion of Judge Margolis's First Recommended Ruling in Part II. C.6., *infra*.

10. At least, that is the strongest interpretation for many parts of plaintiff's opposition, which sometimes reads like an examination in logic:

> *IF* there is *no prior judgment from a court of competent jurisdiction on the claims before this court,* which there is not, THEN Defendants Hyland Delisa cannot be dismissed from this action grounded on their

not having acted *"under color of law"* with state Defendants and Defendant Sonneman cannot be dismissed grounded on "prosecutorial immunity".

Pls.' Obj'n to R.R.1 at 6–7.

11. Judge Kravitz dismissed most of the federal claims at a preliminary stage in *Sullivan III*. After discovery, he adjudicated the remaining federal claims in favor of the defendants, and he declined to exercise supplemental jurisdiction over the state law claims. His reasons for doing so would apply with equal force here, which is why I first examine whether plaintiffs have stated any federal claims that can survive dismissal.

against self incrimination, warrantless searches in violation of the Fourth Amendment, and encroachments upon free speech in violation of the First Amendment. *See, e.g.,* Second Am. Compl., *Sullivan III,* Doc. # 173, at 15 (filed Dec. 8, 2004) (allegations against defendant Maryanne Delisa); *id.* at 43, Doc. # 173–2 at 16 (allegations against defendant Gregory Zigmont); *id.* at 47, Doc. # 173–2 at 20 (allegations against defendant Charles Coffey); *id.* at 51, Doc. # 173–2 at 24 (allegations against defendant James Hyland); *id.* at 54, Doc. # 173–3 at 1 (allegations against defendant Terri Sonneman); Motion To Bring In An Additional Defendant, *Sullivan III,* Doc. # 189 (Dec. 27, 2004) (attempting to join John Malone as a defendant in his individual and official capacities, and proposing an amended set of claims against him in particular).

Plaintiffs believe that their current Complaint states "claims of a Section 1983 conspiracy for false arrest, retaliatory malicious prosecution and abuse of process." Pls.' Obj'n to R.R.1 at 1–2. They are correct that 42 U.S.C. § 1988 specifies that actions brought under § 1983 are decided by reference to state common law in the absence of an applicable federal standard. *See Conway v. Village of Mount Kisco, N.Y.,* 750 F.2d 205, 215 (2d Cir.1984) (applying state standards for malicious prosecution); *Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir.1995) (applying state standards for false arrest); *see also Pizarro v. Kasperzyk,* 596 F.Supp.2d 314, 317 (D.Conn. 2009). This interplay has led the Second Circuit to state that claims for false arrest or malicious prosecution are "substantially the same" as claims under § 1983 for violations of the Fourth and Fourteenth Amendments. *Jocks v. Tavernier,* 316 F.3d 128, 135 (2d Cir.2003).

But even though plaintiffs highlight the differences between the new claims in this action and those before Judge Kravitz, the foundation upon which this "new" action is built is identical to that in *Sullivan III*: both actions allege claims by the same plaintiffs, against the same defendants, arising from the same sequence of events, for damages under § 1983, for an infringement of an assortment of federal constitutional rights. The fact that different state-law labels have been applied to these claims changes nothing.

### 2. Legal Standard for Preclusion of Federal Claims

The Second Circuit has spoken extensively on the requirements of *res judicata,* summarizing its own precedents and those of the Supreme Court.

> Under the doctrine of *res judicata,* or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action. Thus, the doctrine bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.

> *Res judicata* is a rule of fundamental repose important for both the litigants and for society. It relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication.

*EDP Medical Computer Systems, Inc. v. U.S.,* 480 F.3d 621, 624 (2d Cir.2007) (internal quotation marks, citations, and brackets omitted; emphasis added); *see also Esquire Trade & Finance, Inc. v. CBQ, Inc.,* 562 F.3d 516, 520 (2d Cir.2009) (articulating the same test for *res judicata* ). Of the claims that were dismissed in plaintiffs' previous federal lawsuit, some were dismissed at the motion to dismiss

stage, others on a motion for summary judgment, and still others were preemptively denied on motions to amend the complaint or to join new defendants. However, the stage of dismissal is irrelevant. *See, e.g., Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merit s.' "); *Northern Assurance Co. of Am. v. Square D Co.,* 201 F.3d 84, 88 (2d Cir.2000) (some denials of leave to amend are on the merit s, but even where not, denial may "signify at what point claims have been forfeited due to a plaintiff's failure to pursue all claims against a particular defendant in one suit," because the claims *could* have been brought earlier).

Similarly, for collateral estoppel, or issue preclusion,

> [t]he fundamental notion . . . is that an *issue* of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies. Accordingly, collateral estoppel applies when: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits.

*Ali v. Mukasey,* 529 F.3d 478, 489 (2d Cir.2008) (internal quotation marks and citations omitted; emphasis added).

■ Finally, even though *res judicata* and collateral estoppel "are affirmative defenses," *Flaherty v. Lang,* 199 F.3d 607, 612 (2d Cir.1999), they may still be raised on a motion to dismiss under Rule 12(b)(6).

> Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when a defendant raises claim preclusion . . . as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.

*Conopco, Inc. v. Roll Intern.,* 231 F.3d 82, 86 (2d Cir.2000); *see also* R.R.1 at 14 (collecting other cases). That is precisely the case here.

Although she used a formulation that enumerates these elements in a slightly different fashion, Judge Margolis applied these tests correctly.[12] She recommended dismissing all claims against defendant Hyland on the grounds of *res judicata,* because they were or could have been raised in *Sullivan III. See* R.R.1 at 14–17. Furthermore, although she did not specifically entertain a collateral estoppel analysis in defendant Hyland's case, *see* R.R.1 at 17 n. 20, Judge Margolis explicitly held that these claims fall "for the same reason" that they were dismissed in *Sullivan III*—"plaintiffs fail to allege sufficient facts to demonstrate any state action by defendant Hyland." R.R.1 at 17. For private defendants, this requires a finding that the defendant's actions could be fairly attrib-

---

**12.** Judge Margolis's formula did not inquire whether this Court was a "court of competent jurisdiction." There can be no question that it was, and is, within its jurisdiction to adjudicate these plaintiffs' claims under § 1983. To the extent their objection challenges this prong, *see, e.g.,* Pls.' Obj'n to R.R.1 at 5 ("There exists no prior final judgment by any court of competent jurisdiction as to probable cause for the overall ongoing Section 1983 combined conspiratorial conduct of Defendants . . . ."), that objection is not supported with either fact or legal argument in plaintiffs' briefs. It is, therefore, wholly without merit.

uted to the state.[13] Because that issue was identical to one previously decided by Judge Kravitz, after a full and fair opportunity for litigation, and it was actually decided and essential for the final determination on the merits of the claim against defendant Hyland, all claims under § 1983 against defendant Hyland are barred by collateral estoppel. Judge Margolis applied an identical analysis to defendant Delisa. *See* R.R.1 at 17–20. Similarly, Judge Margolis recommended dismissing claims against defendant Delisa because claims under § 1983 require state action. Judge Margolis recommended dismissing all claims against defendants Sonneman on the grounds of *res judicata,* because plaintiffs asserted the same claims against her as in their *Sullivan III,* but provided no additional facts to suggest a different outcome. *See* R.R.1 at 21–22. Judge Margolis recommended dismissing all claims against defendant Malone on the grounds of *res judicata,* because Judge Kravitz rejected an attempt to add those same claims, holding them barred as a matter of law by the doctrine of prosecutorial immunity. Judge Margolis also recommended dismissing claims against defendant Malone because the factual allegations against Malone were identical to those against Sonneman, and therefore the necessary elements which had been decided in Sonneman's favor would necessarily be decided in Malone's favor as well, therefore exclud-ing those claims by operation of collateral estoppel. *See id.* at 22. Finally, Judge Margolis recommended dismissing all claims against defendants Zigmont and Coffey in their individual capacities on the grounds of *res judicata* and collateral estoppel, because in *Judge Kravitz's Summary Judgment Ruling,* he determined several critical issues in favor of those defendants. Claims against these defendants "were thoroughly analyzed and completely disposed of in *Sullivan III,* and because they allege no new claims and state no new facts to support their numerous constitutional claims in this action," the claims against Zigmont and Coffey must be dismissed on grounds of both *res judicata* and collateral estoppel. *Id.* at 25.

Judge Margolis also correctly stated the principles motivating issue and claim preclusion: "It is important that courts vigilantly apply principles of preclusion because they involve more than the rights and interests of the parties. They also serve the important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions." R.R.1 at 22 (quotation marks omitted).

Because her application of these legal principles was correct, I will not elaborate further on that application, except insofar as it is required to address the specific objections made by plaintiffs.

I turn to those objections now.

---

**13.** Determining whether a private individual was acting "under color of state law" for the purposes of § 1983—and the corollary inquiry of whether there is sufficient "state action" to satisfy the Fourteenth Amendment—is an area of law that is fraught with complexity and nuance. The Supreme Court has listed a wide variety of factors suggesting whether behavior can be "fairly attributed" to the state. *See Brentwood Academy v. Tenn. Secondary School Athletic Ass'n,* 531 U.S. 288, 295–296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (listing such factors); *see also Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Judge Kravitz took all of these factors into consideration, and furthermore afforded plaintiffs wide latitude as *pro se* parties, construing their complaint liberally to consider whether it sufficiently alleged a § 1983 conspiracy theory. *See Judge Kravitz's Ruling,* 2004 WL 1179351 at *11–12. He concluded that it did not. *See id.* at *13, *15.

### 3. Plaintiffs Do Not Dispute That Identical Claims Should Be Dismissed

To begin, I note the State of Connecticut's argument that "[a]s a threshold matter, the plaintiffs raise no objection to the Magistrate Judge's ruling to the extent it recommended dismissal of all the claims the plaintiffs made in *Sullivan III*.... Thus, the plaintiffs have waived any objection to the dismissal of those claims." State Defs.' Resp. [doc. #45] at 5 (citing the local rules of this federal district court—specifically, D. Conn. Local R. Civ. P. 72.2, which provides that parties objecting to a recommended ruling must "specifically identify the ruling ... or part thereof to which objection is made and the factual and legal basis for such objection"). The Sullivans do not appear to contest this argument in their Reply. Moreover, I agree with Judge Margolis's conclusion that many claims in this suit are duplicative of those in *Sullivan III*, and at least with respect to those claims, the plaintiffs have not advanced a single convincing reason why those claims are not precluded by the prior suit.

Therefore, to whatever extent any of the claims in this lawsuit are the same ones raised in *Sullivan III*, they *must* be dismissed under the doctrine of claim preclusion.

### 4. Opportunity To Litigate

In the Second Circuit, "*[r]es judicata* does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim." *EDP Med. Computer Sys. v. United States*, 480 F.3d 621, 626 (2d Cir.2007).

The briefs filed by plaintiffs clearly demonstrate their strongly held belief that the claims in this matter are different from those raised in *Sullivan III*. *See, e.g.,*

Pls.' Reply re. R.R.1 [doc. #47] at 1 ("*Sullivan III* ... *did not include claims* for damages as a result of false arrest, malicious prosecution or abuse of process because Plaintiffs research was clear that said claims *were not actionable* until *AFTER* termination of the state criminal action....***"). Indeed, on their own, plaintiffs describe the purpose of this action as to vindicate precisely those claims that Judge Kravitz would not permit them to introduce into *Sullivan III*. *See* Pls.' Obj'n to R.R.2 [doc. #43] at 7.

Reading the plaintiffs' briefs in the light most favorable to them, and affording them the latitude given to *pro se* parties, plaintiffs appear to believe that in *Sullivan III*, they were denied an opportunity to litigate in two respects. First, they believe their "new" claims for false arrest, abuse of process, and malicious prosecution *could not have been raised* in *Sullivan III*. Second, they appear to believe that *even if* they could have raised those claims, they were not presented with a "full and fair opportunity" to do so.

Stated more completely, their argument would be as follows: In order to prove some of their federal constitutional claims, Judge Kravitz would have looked to the elements of similar claims under state law. Because state law claims for false arrest, malicious prosecution, and abuse of process require a criminal action to have been dismissed in the defendant's favor, those claims could not have succeeded prior to the dismissal of the state criminal action. Therefore, (1) until the state criminal charges were dismissed, those claims "could" not have been raised for *res judicata* purposes. Furthermore, (2) because Judge Kravitz did not permit them to add these claims after the criminal action was dismissed in Philip Sullivan's favor, plaintiffs did not have a "full and fair opportuni-

ty" to litigate these claims. I address these arguments in turn.

### i. Availability of Claims for False Arrest, Abuse of Process, and Malicious Prosecution

It is clearly the case that claims for false arrest, abuse of process, and malicious prosecution *could* have been *raised* in *Sullivan III*, even though Judge Kravitz's analysis makes it clear that such claims ultimately would not have succeeded. We know this because plaintiffs' § 1983 claims were dismissed for reasons *other than* the plaintiffs' inability to demonstrate that a criminal action had terminated in their favor.

Specifically, as we have already noted, the claims against the private defendants were dismissed for failure to allege "state action" sufficient under § 1983. Claims against defendants Sonneman or Malone were dismissed or preemptively rejected, respectively, because among other reasons, plaintiffs could not defeat the doctrine of prosecutorial immunity as a matter of law. Finally, claims against defendant investi-

gators Zigmont and Coffey in their individual capacities were adjudicated in favor of those defendants after discovery. The Court granted those defendants' motion for summary judgment on the basis of several determinations, none of which concerned the timing of state criminal dismissal, and many of which would apply to claims under § 1983 for false arrest, abuse of process, or malicious prosecution.[14]

### ii. Fullness and Fairness of the Opportunity to Litigate

Plaintiffs also argue more generally that preclusion "is inapplicable ... because Plaintiffs have never had a full and fair opportunity to litigate their claims of a 1983 conspiracy grounded on false arrest, retaliatory malicious prosecution and abuse of process in the absence of probable cause as alleged in this action ..." Pls.' Obj'n to R.R.1 at 4–5.

But plaintiffs cite not one single fact to support that proposition. Instead, they cite four cases where collateral estoppel did not apply, without discussion. *Id.* at 5. Those cases are easily distinguished.[15]

---

14. Judge Kravitz considered claims made by plaintiffs that warrants issued in January and April, 2001, were invalid and therefore did not provide probable cause for a search of the premises or for Mr. Sullivan's arrest. "Utilizing the corrected affidavits doctrine and adding all of the allegedly exculpatory information that the Sullivans wanted added, the Court nonetheless concludes that there was sufficient truthful information in the affidavit to support a finding of probable cause." 487 F.Supp.2d at 81.

As the state correctly notes in its brief, "these holdings were fully litigated and necessary to support the district court's final judgment.... That is fatal to the plaintiffs' federal and state claims of malicious prosecution and false arrest." State Defs.' Resp. to R.R.1 [doc. # 45] at 7.

Similarly, claims under the First Amendment were dismissed because "nothing in the record, even construed in the light most favorable to the Sullivans," demonstrated that defendant Zigmont's arrest of Philip Sullivan

was improperly motivated or caused by Mr. Sullivan's exercise of his First Amendment rights. 487 F.Supp.2d at 85.

15. For example, in *Golino v. City of New Haven*, a plaintiff was not collaterally estopped from litigating a question of probable cause because he had been prohibited from presenting evidence at state court hearing and no access to police investigative file which contained exculpatory information, among other deficiencies. The Second Circuit held those "procedural limitations [] curtailed Golino's efforts to secure the full and fair litigation of the probable cause issue." 950 F.2d 864, 869 (2d Cir.1991). The distinction is manifest. Golino was denied an opportunity to examine and present exculpatory evidence. Here, the plaintiffs were denied the opportunity to reinstate claims that the Court had already determined would fail as a matter of law, after countless failed attempts to improve those claims. Other cases cited by plaintiffs are similarly distinguished.

Even reading plaintiffs' arguments so as to present the strongest arguments they suggest, there are only two allegations that could possibly support their charge that *Sullivan III* was not a full and fair opportunity to litigate.

The first possible argument that "in *Sullivan III*, Plaintiffs' were denied the due process opportunity to amend their complaint to include said defendants and said claims." Pls.' Obj'n to R.R.1 at 4. They point specifically to Judge Kravitz's denial of their September 26, 2005 motion, which sought reconsideration of the Court's previous dismissal of certain defendants and claims, for failure to state a claim upon

which relief can be granted. But contrary to plaintiffs' suggestion, Judge Kravitz's denial was eminently fair, because it came only after plaintiffs had repeatedly neglected several opportunities to cure defects in their complaint.[16]

In fact, Judge Kravitz's opinions themselves argue against plaintiffs' claims that they were denied "due process." In those opinions, Judge Kravitz repeatedly remarked that plaintiffs explicitly *denied that* they were raising a claim for malicious prosecution.[17] If this denial was the product of plaintiffs' misunderstanding regarding the applicable legal standards at that time,[18] it does not follow that they

---

**16.** The history of these amendments and subsequent motions for reconsideration is retold in painstaking detail in the Memorandum of Decision in *Sullivan III* filed September 29, 2005 [doc. # 250]. In short, after two amended complaints, claims against many defendants (including most private defendants) were dismissed without prejudice to amendment; after reconsideration and amendments, the defendants were dismissed again, this time with prejudice. Thereafter, plaintiffs filed the motion to add these additional claims against the already-dismissed defendants. Judge Kravitz found "no reason to permit Plaintiffs to reassert claims" which he had "several times rejected." *Id.* at 4.

**17.** *See, e.g.,* Ruling and Order, *Sullivan III*, 2005 WL 2209301, [doc. # 246] (Sept. 12, 2005) ("Defendants noted that Plaintiffs' allegations could be read to state a malicious prosecution claim based on Defendants' investigation and arrest of Mr. Sullivan. However, in their Objection to State's Renewed Motion to Dismiss, Plaintiffs expressly stated that they do not bring such a claim. Therefore the Court does not address Defendants' malicious prosecution arguments." (citations omitted)); *Judge Kravitz's Summary Judgment Ruling, Sullivan III*, 487 F.Supp.2d at 73 n. 18 (May 30, 2007) ("[T]he Sullivans expressly denied ... that they are asserting any claim of malicious prosecution. Furthermore, the Sullivans did not request permission to add a malicious prosecution claim when they sought to amend their complaint for the fourth time. Because the Sullivans have not asserted a malicious prosecution claim and

have expressly disclaimed any interest in doing so, the Court will not address malicious prosecution as an independent basis for recovery." (citations omitted)).

Far from demonstrating that plaintiffs were denied a full and fair opportunity to litigate, these citations actually demonstrate two facts: first, that plaintiffs clearly *could* have raised these claims, and second, *just how easy* it would have been for plaintiffs to do so.

**18.** *See* Pls.' Reply to R.R.1 at 1 ("Plaintiffs research was clear that said claims were not actionable until AFTER termination of the state criminal action pretrial in favor of Mr. Sullivan and that did not occur until April 1, 2005."). Plaintiffs return to this argument again and again, relying on well-established rule of preclusion that "while a previous judgment may preclude litigation of claims that arose prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir.2000) (internal quotation marks omitted; quoting *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)). What plaintiffs fail to appreciate is that being able to satisfy one particular element of a claim—such as the dismissal of the criminal action in Philip Sullivan's favor—does not bring a new claim into "existence" if another element—state action by the private defendants—can never be satisfied regardless.

were denied a "full and fair opportunity" to present those claims. To borrow a phrase from the Second Circuit's conclusion in *EDP Medical:* faced with this apple, plaintiffs kept their mouths closed; they cannot now take a bite. *See* 480 F.3d at 627.

The second possible argument is that plaintiffs were denied a "full and fair opportunity" to litigate when Judge Kravitz threatened sanctions for further attempts to reintroduce those claims and defendants. *See* Pls.' Reply Mem. [doc. # 47] at 1–2. In the same 2005 opinion, Judge Kravitz wrote: "**The Court will not look favorably upon any future attempt to resurrect already-dismissed claims and already-dismissed defendants and may impose sanctions if Plaintiffs persist in seeking to do so.**" Memorandum of Decision [doc. 250] at 4, *Sullivan III* (Sept. 29, 2005).

The argument that the threat of sanctions somehow denied plaintiffs a full and fair opportunity to litigate has no merit. The Court threatened sanctions because plaintiffs simply refused to concede that some of their claims were destined to fail as a matter of law. Attempting to reintroduce such claims only served to waste the time and resources of other litigants and of the court, and it only served to abuse the judicial process.

### 5. Statute of Limitations

The State argues in its brief that plaintiffs' claims under § 1983 can also be dismissed under the statute of limitations. State Defs.' Resp. [doc. # 45] at 11–12. The State is correct that constitutional violations under § 1983 must be brought within Connecticut's statute of limitations for tort claims. *See, e.g., Walker v. Jastremski,* 430 F.3d 560, 561 (2d Cir.2005) (citing Conn. Gen.Stat. § 52–577). These arguments may very well have merit, but I decline to rule on them, because I find the

federal claims in this case to be completely precluded in any event.

### 6. State-law Claims

The Sullivans appear to request that this Court exercise its supplemental jurisdiction over state law claims. No federal claims survive, and I decline to exercise supplemental jurisdiction over state claims. In that circumstance, this Court should not express an opinion with respect to the merits of state law claims, and accordingly I do not accept those portions of the First Recommended Ruling that hold plaintiffs' state law claims are deficient on their merits.

### III. The Second and Third Recommended Rulings: Motions for an Injunction Against Future Litigation

Last October, defendant Hyland filed a motion for an injunction against plaintiffs filing "any action in any federal or state court" against himself "or against Kathryn Hyland, Martin Crowell, Jeffrey Stein, Edward McAnaney (together, the 'Hylands')." [Doc. # 30] at 1. Plaintiffs moved to strike that motion. [Doc. # 36]. Judge Margolis recommended granting defendant Hyland's motion in part, and denying plaintiffs' motion to strike, in her Second Recommended Ruling, dated November 25, 2008. Specifically, Judge Margolis recommended enjoining plaintiffs "from instituting any new action, in state or federal court, based on the claims and defendants involved in *Sullivan I, Sullivan II, Sullivan III,* or this present suit, *Sullivan IV.*" R.R.2 at 7. Additionally, Judge Margolis ordered plaintiffs "to attach to their complaint or other initial pleading in any future litigation, *on any subject,* a copy of this Order." *Id.*

In December, defendant Delisa adopted the same motion, and also moved separate-

ly for a similar injunction against plaintiffs' commencing future lawsuits "against her or her husband." [Doc. # 50]. Plaintiffs moved to strike her motion as well, [doc. # 48], and in her Third Recommended Ruling [doc. # 55], Judge Margolis recommended granting defendant Delisa's motion and denying the plaintiffs' motion to strike, in identical terms to her Second Recommended Ruling. *See* R.R.3 at 3–4.

### A. Standard of Review

Judge Margolis correctly stated the standard of review when assessing a party's request for an injunction against future litigation. That standard, set forth in a line of cases including *Safir v. U.S. Lines Inc.*, 792 F.2d 19 (2d Cir.1986), and *In re Martin–Trigona*, 737 F.2d 1254 (2d Cir. 1984), requires the Court to consider a number of factors in a balancing test:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Iwachiw v. N.Y. State Dept. of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir.2005) (quoting *Safir v. United States Lines Inc.*, 792 F.2d 19, 24 (2d Cir.1986)).

### B. Discussion

Plaintiffs' primary objection to the motions for injunctions concern the standard applied and the denial of an in-person hearing on those motions. *See* Pls.' Obj'n to R.R.2 [doc. # 43] at 4–8, 9–11; Pls.' Obj'n to R.R.3 [doc. # 56] at 5–10, 9–12.[19]

In particular, plaintiffs argue that their prior litigation was not frivolous, they have no history of vexatious or harassing litigation, that they are not repeat filers, and that they had an objective, good-faith expectation of prevailing.

I agree with Judge Margolis's Second Recommended Ruling on all these factors. *See* R.R.2 at 5–6. I supplement that ruling only to note two aspects of particular concern.

First, plaintiffs filed their present lawsuit, *Sullivan IV*, after being explicitly prohibited from adding those claims in *Sullivan III*, and after being explicitly warned by Judge Kravitz that "[t]he **Court will not look favorably upon any future attempt to resurrect already-dismissed claims and already-dismissed defendants and may impose sanctions if Plaintiffs persist in seeking to do so.**" Memorandum of Decision [doc. 250] at 4, *Sullivan III* (Sept. 29, 2005) (emphasis in original). *Sullivan IV* seeks to do precisely what this Court prohibited in *Sullivan III*: resurrecting already-dismissed claims against already-dismissed defendants. Because of that fact, *Sullivan IV* clearly deserves to be designated as "vexatious." I agree with Judge Margolis that the raw

---

**19.** In their briefs objecting to the Second and Third Recommended Rulings, plaintiffs repeatedly cite cases and quote excerpts from treatises to make an additional argument that Judge Margolis failed to comply with the requirements of Federal Rule of Civil Procedure 65(a) and 65(c). Pls.' Obj'n to R.R.2 at 4–5; Obj'n to R.R.3 at 6–7. Their confusion is understandable, but those rule provisions do not apply in this case; they apply only to *preliminary* injunctions or temporary restraining orders. The injunction sought by defendants, and approved by Judge Margolis, are permanent injunctions that will only enter upon this Court's approval of Judge Margolis's Second and Third Recommended Rulings.

number of lawsuits is not determinative of whether an injunction against future litigation should issue. Rather, the question is whether plaintiffs' history of litigation demonstrates a propensity to file *duplicative* actions. *See* R.R.2 at 5. There can be no question that this action is highly duplicative of the last.

Second, there is strong evidence to suggest that plaintiffs do not intend for it to be the last of its kind. I read the plaintiffs' submissions to the Court over the course of this action in the same way as Judge Margolis—to suggest that plaintiffs will not stop litigating their claims until they find a judge who agrees with them. *See* R.R.2 at 6. This conclusion is only strengthened by the briefs filed by plaintiffs in objection to the recommended rulings. Plaintiffs appear to honestly believe that they "have never had a full and fair hearing or trial in any court they have been before [—] other than Judge Sheldon" (who has been the only judge to issue a ruling favorable to plaintiffs). Pls.' Reply to R.R. 1 [doc. # 47] at 9.

Combining these observations with the discussion in the Second Recommended Ruling, I hold that Judge Margolis properly considered the five-factor balancing test prescribed by the Second Circuit, and that she properly arrived at the conclusion that an injunction against future litigation would be appropriate in this case.

Furthermore, the cases cited by Judge Margolis specifically contemplate an injunction against litigation in state courts, at least to the limited extent necessary to protect federal litigants from vexatious litigation that serves to suppress their access to judicial remedies in all judicial fora. In *In re Martin–Trigona,* the Second Circuit explained the circumstances in which federal jurisdiction will extend to prevent vexatious litigation in state courts:

> [T]he protection of federal jurisdiction does not necessarily require extension of each provision of the injunction to actions brought in state courts.... Abuse of state judicial processes is not *per se* a threat to the jurisdiction of Article III courts and does not *per se* implicate other federal interests....
>
> It does not follow, however, that some qualifications relating to the protection of federal interests may not be placed upon [a vexatious litigant's] resort to state courts. First, while comity usually requires us to abstain from intrusion into state proceedings, a spirit of cooperative federalism calls upon us to alert state courts to [the litigant's] past activities so they may take judicial notice of matters relevant to new litigation brought by him ....
>
> Second, protection of our jurisdiction requires that we shield federal litigants, their counsel, court personnel, their families and professional associates from [the litigant's] vexatious litigation in all courts, state or federal.... On remand, the district court should fashion an injunction prohibiting Martin–Trigona from bringing new actions in any tribunal without leave from the district court against persons who have encountered him in any capacity in litigation in the District of Connecticut or in this court, including, but not necessarily limited to, court personnel, counsel, and the families and professional associates of such persons.

*Id.* at 1262–63.[20]

Apart from their objections to Judge Margolis's application of the standard to

---

**20.** The Second Circuit also added a safety valve, which was to "explicitly exempt complaints by Martin–Trigona or anyone acting in his behalf under" the statutory provision that "relates to complaints of judicial misconduct." There had been no finding that Mar-

issue an injunction against litigation, plaintiffs also argue that they were not given a proper opportunity to be heard on the motion for an injunction because they were not afforded oral argument.

This argument, too, has no merit. The clear rule in the Second Circuit is that "[m]otions may be decided wholly on the papers, and usually are." *World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 366 (2d Cir.1965); *see also McCall v. City of Danbury*, 16 Fed.Appx. 77, 80 (2d Cir.2001) (citing *World Brilliance* and collecting cases standing for the proposition that "the 'hearing' requirements of Rule 12 and Rule 56 do not mean that an oral hearing is necessary, but only require that a party be given the opportunity to present its views to the court"). In her recommended rulings, Judge Margolis addressed the arguments in plaintiffs' briefs, showing both that plaintiffs had an opportunity to be heard, and that plaintiffs actually were heard.

Plaintiffs also object that the defendants seeking these injunctions—Hyland and Delisa—do not have Article III standing to seek injunctions against the filing of lawsuits against the other defendants in this matter. *See* Pls.' Obj'n to R.R.3 [doc. # 56] at 10–12. This argument, too, fails. As parties who continue to accrue attorneys' fees in defending against this litigation, it is clear that all the defendants in this action have the right to seek an injunction against litigation for themselves at least. Furthermore, so long as an individual has standing to seek an injunctive remedy as to herself, there is nothing in the doctrine of standing that prohibits

seeking a broader remedy that would protect similarly situated individuals. And finally, it is difficult even to apply the doctrine of standing to this situation, since courts always speak of standing as a constraint on the "justiciability" of cases and on who can be a *plaintiff.* It is impossible for *defendants* to lack "standing." To the extent that defendants' request for a protective injunction could be considered a "counterclaim" that requires separate standing, independent of that required from the plaintiffs, I find that the defendants have suffered an injury in fact, that injury is fairly traceable to the plaintiffs' conduct in this case and other cases, and the injunctive remedy sought will in fact redress that injury.

Finally, this case is ripe for an injunction against litigation. "The unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir.1998); *see also Iwachiw*, 396 F.3d at 529 (reaffirming this rule). It is clear that plaintiffs were given notice of the defendants' request for such an injunction, that they were given an opportunity to be heard, and that they actually were heard.

In short, all of the arguments offered by plaintiffs in opposing this injunction fail.

There is, however, one error that must be corrected. Judge Margolis entered the injunction against all state (and federal) litigation on "the claims and defendants involved in *Sullivan I, Sullivan II, Sulli-*

---

tin–Trigona had abused that particular cause of action, and the Second Circuit also observed that proceedings under that statute do not affect other litigants. Thus, because the purpose of the statutory remedies relating to judicial misconduct is "to impose a form of monitoring upon the judiciary itself, ... en-

joining resort to [that statute] can be justified only by a finding of abuse impairing the administration of justice." *Id.* While plaintiffs' behavior in these cases comes close to "abuse impairing the administration of justice," they have not yet abused the specific protections afforded by 28 U.S.C. ch. 16, §§ 351 *et seq.*

*van III*, or this present suit, *Sullivan IV*." R.R.2 at 7. That injunction was too broad, because Judge Kravitz's dismissal of pendent state-law claims in *Sullivan III* was not "on the merit s" for *res judicata* purposes. *See St. Pierre v. Dyer*, 208 F.3d 394, 399–401 (2d Cir.2000) (dismissal for lack of subject-matter jurisdiction is not adjudication on the merits and has no claim-preclusive effect); *McLearn v. Cowen & Co.*, 660 F.2d 845, 848 (2d Cir.1981) (district court erred in dismissing pendent state claims on merit s). Similarly, to the extent the First Recommended Ruling held in the alternative that some of plaintiffs' state-law claims should be dismissed on the merits, *see* R.R.1 at 25–26, that dismissal would have been without prejudice to amend those state-law claims. Such an opportunity has not, and will not, be provided to plaintiffs.

The State Attorney General's office, in its brief for the State Defendants, also concedes that passing any decision on the state claims might require this Court to decide novel questions of state law. See State Defs.' Resp. re. R.R.1 [doc. # 45] at 12 n. 6 ("[T]he Connecticut courts appear not to have expressly addressed the statute of limitations for constitutional tort claims of the sort the plaintiffs allege.... To the extent there is any uncertainty on that question, it counsels in favor of this Court declining to exercise supplemental jurisdiction over the plaintiffs' state law claims...."). I agree, and this Memorandum of Decision avoids passing judgment on the merits of plaintiffs' state law claims. It would be improper, then, to prohibit plaintiffs from seeking an answer to this question from the courts that are best-equipped to answer it.

Nevertheless, even though I have not adopted those portions of the First Recommended Ruling that dismiss state law claims on their merit s, I believe Judge Margolis's analysis should give plaintiffs serious pause. Plaintiffs should not proceed to file another action in state court without being fully prepared to address those deficiencies in their prior actions.

## IV. Conclusion and Orders

The First Recommended Ruling, Second Recommended Ruling, and Third Recommended Ruling are hereby approved and adopted as modified by the foregoing opinion.

Defendants' motions to dismiss are hereby GRANTED. Plaintiffs' federal claims are dismissed with prejudice, because they are precluded on the basis of both claim and issue preclusion. Plaintiffs' claims under state law are dismissed, without prejudice, for lack of subject matter jurisdiction. The Clerk of Court is instructed enter judgment for defendants, with prejudice and without costs, and to close the file.

Furthermore, the two defense motions to enjoin plaintiffs against future litigation on this subject are GRANTED IN PART. Plaintiffs' motions to strike those defense motions are DENIED.

***Plaintiffs must seek permission of this Court before filing any lawsuit, in any court*** (state or federal), ***alleging violations of federal law that relate to the subject matter of any of their previous lawsuits*** (*Sullivan I, Sullivan II, Sullivan III,* or this lawsuit, *Sullivan IV*).[21] ***If***

---

21. That subject matter is more fully described in Part I of this Memorandum, *supra.* I am mindful of Fed.R.Civ.P. 65(d), which mandates that "[e]very order granting an injunction ... must: ... (B) state its terms specifically; and (C) describe in reasonable detail— and not by referring to the complaint or other document—the act or acts restrained or required." Nevertheless, it is impossible to capture the entire litigation history of these four lawsuits in one Memorandum of Decision, let alone in these concluding Orders.

*plaintiffs wish to seek such permission, they must file an application before me, consisting of a memorandum of no more than two (2) pages, describing the claims they wish to file and the reasons why those claims are not already precluded.* Plaintiffs need not seek permission to file lawsuits that are wholly unrelated to their previous lawsuits, nor must they seek permission to file a federal complaint under 28 U.S.C. §§ 351 *et seq.*

Plaintiffs need not seek permission of this Court if they wish to pursue *only* their claims under Connecticut state law in a state court. However, if they choose to file a lawsuit in state court, *plaintiffs are hereby ORDERED to attach to any such complaint a copy of this opinion, as well a copy of Judge Margolis's three recommended rulings [docs. ## 39. 40. 55] in this matter.*

The Court also advises plaintiffs that claims against defendants Sonneman and Malone are almost certainly barred by the doctrine of absolute prosecutorial immunity, as described in the State's brief [doc. # 45] at 9–11, and claims against all defendants for misuse of process were not stated sufficiently, as described in the First Recommended Ruling at 25–26. In addition, many or all of plaintiffs' claims may be time-barred, as detailed in the State's brief at 11–13. Finally, many of the determinations reached by Judge Kravitz in *Sullivan III*—including the determination that the State Defendants were acting on a basis of probable cause—may have preclusive weight in a state-court action, making plaintiffs unable to establish the necessary elements for claims under state law.

Plaintiffs should anticipate that defendants will raise the arguments I have just described in a motion to dismiss any complaint under state law. Therefore, if plaintiffs chose to file a complaint alleging state law violations that relate to the subject matter of any of their previous lawsuits, they should perform legal research on these particular issues to ensure that their claims have merit and can still be brought in good faith. Furthermore, *plaintiffs are ORDERED to attach to any state complaint a memorandum, no more than five (5) pages long, describing their research and their arguments why their claims should NOT be dismissed for the reasons stated above.*

Finally, nothing in these Orders shall limit the right of plaintiffs to appeal from this Memorandum of Decision and Order to the United States Court of Appeals for the Second Circuit.

It is SO ORDERED.

## RECOMMENDED RULING ON DEFENDANTS' MOTIONS TO DISMISS

JOAN GLAZER MARGOLIS, United States Magistrate Judge.

On March 31, 2008, *pro se* plaintiffs Philip and Charlotte Sullivan filed an action under 42 U.S.C. § 1983 against defendants James Hyland, Maryanne Delisa, Gregory Zigmont, Charles Coffey, Terri Sonneman and John Malone (Dkt. # 1),[1] claiming that

---

Therefore, I refer to the previous actions out of necessity, and I allow plaintiffs an opportunity to petition this Court if they seek to file a new case which they consider to be outside the proscribed subject matter.

1. All defendants are sued in their individual capacities. Defendants Hyland and Delisa are private citizens; defendants Zigmont and Coffey are criminal inspectors for the State of Connecticut; defendants Sonneman and Malone serve as prosecutors for the State of Connecticut. (Dkt. # 1, *Parties*, ¶¶ 2–7).

Defendant Hyland is married to plaintiff Philip Sullivan's sister, Kathryn Hyland; defendant Delisa is Philip Sullivan's sister. (*Id.*, Count I, ¶ 1). *See* note 9 *infra.*

the state criminal action commenced and prosecuted against Philip Sullivan was a "reckless and/or willful and/or wanton" act committed with "deliberate indifference and/or malice and reckless disregard" of plaintiffs' First, Fourth, Sixth and Fourteenth Amendment rights, as well as in violation of their rights under Article One, Sections 7 and 9, of the Connecticut Constitution, including claims for malicious prosecution, false arrest and abuse of process. (*Id.* at 1, 3). Plaintiffs assert that the criminal action against plaintiff Philip Sullivan ended in his favor and was dismissed for lack of evidence, without objection by the prosecutor. (*Id.* at 3, 9).

One month later, on April 30, 2008, plaintiffs filed their Revised Complaint. (Dkt. # 3). On August 4, 2008, plaintiffs filed an Amended Civil Rights Complaint, in which they added a claim for violation of their Fifth Amendment rights. (Dkt. # 18). The Amended Civil Rights Complaint asserts three counts: conspiracy under color of law to maliciously prosecute plaintiff Philip Sullivan without reasonable basis or probable cause in a state criminal action which ended in his favor (Count I); conspiracy under color of law to falsely

arrest plaintiff Philip Sullivan and deprive him of his Fourth, Fifth and Fourteenth Amendment rights in a criminal action which ended in his favor (Count II); and conspiracy under color of law to abuse the process of arrest and deprive plaintiff Philip Sullivan of his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights in a state criminal action which ended in his favor (Count III).

There are three motions to dismiss pending before this Court. First, on August 25, 2008, defendant Delisa filed her Motion to Dismiss, and brief and exhibits in support. (Dkts. ## 21–23).[2] Second, four days later, defendants Zigmont, Coffey, Sonneman and Malone [collectively "State Defendants"] filed their pending Motion to Dismiss, and brief and exhibits in support. (Dkts. ## 24–25).[3] And last, on the same day, defendant Hyland filed his pending Motion to Dismiss and brief in support. (Dkts. # 26–27).[4]

On September 22, 2008, plaintiffs filed their brief in opposition and/or Motion for Stay. (Dkt. # 28).[5] On October 2, 2008, defendant Hyland and the State Defendants filed their reply briefs (Dkts. ## 33–

**2.** The three exhibits in Dkt. # 23 are copies of plaintiffs' Amended Complaint, dated August 9, 2003, in *Sullivan v. Stein,* No. 3:03 CV 1203(MRK) ["*Sullivan III* "] (Exh. A), and of U.S. District Judge Mark R. Kravitz's forty-two page Memorandum of Decision, filed May 21, 2004 ["*Judge Kravitz's Ruling* "], granting defendant Delisa's Motion to Dismiss (Exh. B).

**3.** The following nine exhibits were attached to their brief (Dkt. # 25): another copy of *Judge Kravitz's Ruling,* published at 2004 WL 1179351, 2004 U.S. Dist. LEXIS 9438 (D.Conn. May 21, 2004) (Exh. 1 & Dkt. # 25–2); copy of Judge Kravitz's Memorandum of Decision, filed February 7, 2005, published at 2005 WL 465425, 2005 U.S. Dist. LEXIS 2840 (D.Conn. Feb. 7, 2005) ["*Judge Kravitz's Joinder Ruling* "] (Exh. 2 & Dkt. # 24–3); copy of plaintiffs' Second Amended

Complaint, filed October 3, 2005, in *Sullivan III* (Exh. 3 & Dkt. # 25–4); copy of the fifty-two page CM/ECF Docket Sheet in *Sullivan III* (Exh. 4 & Dkt. # 25–5); copy of Connecticut Superior Court Judge Michael R. Sheldon's Memorandum of Decision on Motion In Limine, filed March 11, 2005, published in 2005 WL 895893, 2005 Conn.Super. LEXIS 720 (Conn.Super.Ct. Mar. 11, 2005) ["*Judge Sheldon's Ruling* "] in *State of Connecticut v. Philip Sullivan,* No. CR 01106675 (Exh. 5 & Dkt. # 25–6); and copies of other published decisions (Exhs. 6–9 & Dkts. ## 25–7 to 25–10).

**4.** Attached to the brief were excerpts from *Judge Kravitz's Ruling* in *Sullivan III.*

**5.** Attached was one page, entitled "Issues Presented for Review," with five issues listed.

34); the next day, defendant Delisa filed her reply brief (Dkt. # 32). On September 24, 2008, United States District Judge Janet Bond Arterton referred these pending motions to this Magistrate Judge (Dkt. # 29). On October 20, 2008, the case was transferred to Senior United States District Judge Charles S. Haight. (Dkt. # 35).[6]

For the reasons stated below, all three Motions to Dismiss (Dkts. # 21, 24 & 26) are *granted* and plaintiffs' Motion to Stay (Dkt. # 28) is *denied.*

## I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit, filed on March 31, 2008, is the fourth civil action arising from a family dispute that took place in 2000. The following underlying facts are described in the Connecticut Appellate Court's decision in *Sullivan v. Delisa,* 101 Conn.App. 605, 923 A.2d 760 (Conn.App.Ct.2007).[7] Plaintiffs are husband and wife, who lived with plaintiff Philip Sullivan's mother, Mary Crowell, for thirty years in Mrs. Crowell's home. *Id.* at 607–08, 923 A.2d 760. In

late June 2000, Mrs. Crowell informed plaintiffs that she planned to sell her home and to move into an assisted-living facility. *Id.* at 608, 923 A.2d 760.[8] When plaintiffs refused to move out of the home in early July 2000, an argument erupted between Mrs. Crowell and her daughters[9] on the one hand, and plaintiffs on the other hand, following which plaintiffs were instructed to vacate the premises. *Id.* After residing with a number of other relatives, on August 1, 2000, plaintiffs entered into a lease for an apartment in Newington; Mrs. Crowell previously advised plaintiffs and again advised them to remove their personal belongings by August 6,2000, because she rented the property and intended to change the locks. *Id.* at 608–09, 923 A.2d 760. When plaintiffs finally returned to the premises on September 7, 2000, they discovered that the locks had been changed as threatened and that their personal property had been moved to the garage, whereupon eleven days later, plaintiffs sued Mrs. Crowell, Kathryn Hyland and Maryanne Delisa in Connecticut Superior Court ["*Sullivan I* "], with claims

---

6. Two additional motions are pending before the Court: (1) defendant Hyland's Motion for Injunction, filed October 2, 2008 (Dkt.# 30), and (2) plaintiffs' Motion to Strike, filed October 22, 2008 (Dkt. # 36). The briefing has not been completed for these two motions.

7. These facts are also recited by Connecticut Superior Court Judge Juliette Crawford in *Sullivan v. Delisa,* No. CVN 0091831FA, 2002 WL 523076 (Conn.Super.Ct. Jan. 10, 2002), and in *Judge Sheldon's Ruling,* 2005 WL 895893, at *2. Judge Kravitz specifically relies upon Judge Crawford's factual findings in his rulings. 2004 WL 1179351, at *2 & n. 2; *Sullivan III,* 2005 WL 2209301, at *1 (D.Conn. Sept.12, 2005); *Sullivan III,* 487 F.Supp.2d 52, 56–59 (D.Conn.2007) ["*Judge Kravitz's Summary Judgment Ruling* "]. See notes 2–4 *supra.*

8. Plaintiffs were given the option of purchasing the house, or moving out; although the

asking price was below the fair market value, plaintiffs nonetheless declined the offer on July 6, 2000. *Id.*

9. Mrs. Crowell's daughters are Maryanne Delisa, a defendant in this case, and Kathryn Hyland, *Id.* at 607–08, 923 A.2d 760, whose husband, James Hyland, is a named defendant in this case.

Delisa and Kathryn Hyland, both sisters of plaintiff Philip Sullivan, were trustees of a revocable trust established by their mother, Mrs. Crowell; the trust owned Mrs. Crowell's home. *Id.* at 607, 923 A.2d 760. When the sisters resigned as trustees, another was appointed to replace them; plaintiffs appealed that appointment, giving rise to "*Sullivan II,*" which case was ultimately dismissed by the Connecticut Appellate Court, and certification was denied by the Connecticut Supreme Court in February 2007. *See Sullivan v. Delisa,* 281 Conn. 924, 918 A.2d 274 (2007).

of forcible entry, detainer and civil theft. *Id.* at 609–21, 923 A.2d 760; *Sullivan v. Delisa,* No. CVN 0091831FA, 2002 WL 523076, at *1–9 (Conn.Super.Ct. Jan. 10, 2002).

The underlying facts hereafter are described in the decision of Connecticut Superior Court Judge Michael R. Sheldon in *State v. Sullivan,* No. CR 01106675, 2005 WL 895893 (Conn.Super.Ct. Mar. 11, 2005) [*"Judge Sheldon's Ruling"*].[10] While the civil lawsuit in *Sullivan I* was proceeding, defendant James Hyland, husband of Kathryn Hyland, videotaped the contents of Mrs. Crowell's home, before he and his wife began to move plaintiffs' personal possessions in order to make the home more marketable for sale. *Id.* at *2. In the course of walking through the house for this videotape, defendant Hyland discovered that plaintiff Philip Sullivan had wiretapped Mrs. Crowell's phone lines without her knowledge and had accumulated as many as one hundred audiotapes of telephone conversations. *Id.* at *2–5. Defendant Hyland notified the Farmington Police Department, and he thereafter was put in contact with defendant Zigmont. *Id.* at *5–7. After the issuance of search warrants and an investigation of plaintiff Philip Sullivan's personal property, Philip Sullivan was arrested in mid-May 2001. *Id.* at *1. However, prior to plaintiff Philip Sullivan's criminal trial, Mrs. Crowell died on April 23, 2004 at age ninety-three, ren-

dering her affidavits and written statements as inadmissible hearsay. *Id.* at *1, 2, 7–21. As a result, the criminal case was withdrawn. *Id.* at *60.

Meanwhile, a bench trial was held in *Sullivan I* by Connecticut Superior Court Judge Angelos dos Santos, in which judgment was entered for the defendants; Superior Court Judge Santos found that plaintiffs were not in possession of Mrs. Crowell's home on September 7, 2000 pursuant to Conn. Gen. Stat § 47a–43 *et seq.,* that they were not tenants of Mrs. Crowell on that date, that they were not entitled to a constructive trust to be imposed on the home, and that defendants did not breach a stipulation providing plaintiffs with access to their personal property located at the home. 101 Conn.App. at 607–09, 923 A.2d 760. The judgment was affirmed by the Connecticut Appellate Court in June 2007 in *Sullivan v. Delisa,* 101 Conn.App. 605, 923 A.2d 760 (Conn.App.Ct.2007), and the Connecticut Supreme Court denied certification the next month, 283 Conn. 908, 928 A.2d 540 (2007).[11]

While the litigation was continuing in *Sullivan I,* plaintiffs filed a new lawsuit in federal court, *Sullivan v. Stein, et al,* 3:03 CV 1203(MRK) [*"Sullivan III"*], in which they again sued Mrs. Crowell, Delisa, Kathryn Hyland, and James Hyland, along with twenty-four other defendants.[12] *Sul-*

---

**10.** These facts are also recited in *Judge Kravitz's Ruling,* 2004 WL 1179351, at *2; *Sullivan III,* 2005 WL 2209301, at *1 (D.Conn. Sept. 12, 2005); *Judge Kravitz's Summary Judgment Ruling,* 487 F.Supp.2d at 60–62.

In January 2005, Judge Kravitz also denied plaintiffs' Motion for Preliminary Injunction to enjoin this prosecution, on the basis of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Sullivan III,* 2005 WL 43439 (D.Conn. Jan. 4, 2005).

**11.** *See also Judge Kravitz's Summary Judgment Ruling,* 487 F.Supp.2d at 59–60.

**12.** Included among the twenty-eight defendants in *Sullivan III* were several state judges, an Assistant State's Attorney, the Town of Farmington, police officers, former attorneys for plaintiffs, and several family members of plaintiffs' family. *Judge Kravitz's Ruling,* 2004 WL 1179351, at *1 n. 1. Five of the defendants involved in the present case—Hyland, Delisa, Zigmont, Coffey and Sonneman—were sued in *Sullivan III.* Plaintiffs sought to add the sixth defendant here-Malone—as a defendant in *Sullivan III,* but Judge Kravitz denied their requests in Febru-

*livan III* alleged violations of plaintiffs' rights under 42 U.S.C. § 1985 and 42 U.S.C. § 1983 in connection with the events leading up to and following the state court's decision in *Sullivan I*. In late May 2004, Judge Kravitz issued a lengthy ruling, 2004 WL 1179351 (D.Conn. May 21, 2004) [*"Judge Kravitz's Ruling"*], in which he dismissed all of plaintiffs' claims against the twenty-one defendants who had filed Motions to Dismiss, grouping them into three categories: (1) five Judicial Defendants; (2) four State Defendants; and (3) twelve Private Actor Defendants. *Id.* at *1, 5. First, plaintiffs' § 1983 claims against the Judicial Defendants—all of whom had been involved in *Sullivan I*—were dismissed under the doctrine of absolute judicial immunity. *Id.* at *5–6. Next, plaintiffs' § 1983 claims against the State Defendants—who were state prosecutors and inspectors for the Connecticut Criminal Justice Division—were dismissed on the basis of absolute prosecutorial immunity and Eleventh Amendment immunity, respectively. *Id.* at *6–10. Last, Judge Kravitz addressed at great length the Private Defendants, who included many of plaintiffs' former attorneys and family members, dismissing all of these claims. *Id.* at *10–19. Plaintiffs' claims against defendants Thomas and Maryanne Delisa, James and Kathryn Hyland, and Mrs. Crowell were dismissed for lack of sufficient facts demonstrating that any of them conspired or acted jointly with police to deny plaintiffs their constitutional rights. *Id.* at *13–15. Finally, Judge Kravitz concluded that efficiency and fairness would best be served by declining to exercise supplemental jurisdiction over the plaintiffs' assertions under state law, including claims for

alleged violation of Article First of the Connecticut Constitution, and intentional infliction of emotional distress. *Id.* at *20–21.[13] In April 2007, Judge Kravitz denied plaintiffs' Motion to Renew their claims as to defendants Maryanne Delisa and James Hyland, and to amend their complaint. 2007 WL 1114028 (D.Conn. Apr. 10, 2007)[*"Judge Kravitz's Reconsideration Ruling"*].

In late May 2007, Judge Kravitz filed his lengthy ruling granting summary judgment for the remaining defendants, *Sullivan III*, 487 F.Supp.2d 52 (D.Conn.2007) [*"Judge Kravitz's Summary Judgment Ruling"*]. With regard to the Municipal Defendants, Judge Kravitz found that plaintiffs failed to prove their claims for equal protection and due process violations. *Id.* at 65–73. Judge Kravitz similarly found no basis under § 1983 for plaintiffs' claims against the remaining State Defendants—Inspectors Zigmont and Coffey—for improper search and seizure, false arrest, conspiracy, equal protection and due process, and First Amendment retaliation. *Id.* at 73–88. As before, Judge Kravitz declined to exercise supplemental jurisdiction over plaintiffs' state law claims and claims arising under the Connecticut Constitution. *Id.* at 88–89.

Two months later, plaintiffs filed their Notice of Appeal (*Sullivan III*, Dkt. # 371), and the appeal is presently pending before the Second Circuit.

In this action now pending, plaintiffs have alleged that the six defendants—Hyland, Delisa, Zigmont, Coffey, Sonneman

---

ary 2005. 2005 WL 465425 (D.Conn. Feb. 7, 2005) [*"Judge Kravitz's Joinder Ruling"*].

**13.** *See also Sullivan III*, 2004 WL 2750312 (D.Conn. Nov. 18, 2004) (denying plaintiffs' multiple Motions for Reconsideration); 2005

WL 977069 (D.Conn. Apr.19, 2005) (denying plaintiffs' Motions for Order of Certification of Immediate Appeal and for Stay Pending Determination by Second Circuit).

and Malone[14]—conspired under color of law to commence and prosecute criminal proceedings against plaintiff Philip Sullivan in the name of his mother, Mary Crowell, by using fabricated evidence to falsely accuse Philip Sullivan of the crime of eavesdropping pursuant to CONN. GEN. STAT. 53a–189. (Amended Civil Rights Complaint, Count I, ¶ 1). As in *Sullivan I* and *Sullivan III,* defendants Hyland and Delisa are private individuals, once again sued in their individual capacities. However, unlike *Sullivan III,* in which defendants Zigmont, Coffey, and Sonneman were sued in their official capacities, here they are sued in their individual capacities "beyond the discharge of [their] official capacity." (*Id.,* Parties, ¶¶ 4–7). Plaintiffs specifically allege that defendants Hyland and Delisa's purpose in initiating a false criminal complaint against plaintiff Philip Sullivan was to coerce plaintiffs into abandoning their legal rights to initiate a legal action against defendants for locking them out of their rented dwelling of thirty years. (*Id.,* Count I). Plaintiffs further assert that defendants Hyland and Delisa made misleading statements of material fact to defendants Zigmont and Coffey, who had reasonable cause to question their veracity and motives, yet did not do so. (*Id.*).

Plaintiffs also claim that defendants Zigmont and Coffey searched the possessions plaintiffs had left behind at Mrs. Crowell's home without first obtaining lawful warrants, and that they knew or had a duty to know that defendants Hyland and Delisa had "planted" evidence in plaintiffs' possessions. (*Id.,* Count I, ¶ 7). Plaintiffs further allege that defendant prosecutors Sonneman and Malone failed in their duty to institute and follow proper investigative procedures before and after arresting plaintiff Philip Sullivan. (*Id.,* Count I). Further, plaintiffs claim that plaintiff Philip Sullivan remained under arrest and detained in the custody of the state without probable cause for four years in violation of his First, Fourth, Fifth and Fourteen Amendments rights, and was deprived of his Sixth Amendment right to a speedy trial, thereby injuring his good standing and reputation of always doing the "right thing" throughout his life for his family and community. (*Id.,* Counts II–III).

In their briefs, the State Defendants and defendant Hyland argue that this case should be dismissed under the doctrine of *res judicata* (Dkt. # 25, at 11–16; Dkt. # 27, at 6–12), and all defendants assert that this case should be dismissed under the doctrine of *collateral estoppel.* (Dkt. # 22, at 6–8; Dkt. # 25, at 16–20; Dkt. # 27 at 12–13). Private defendants Hyland and Delisa also assert that even if plaintiffs' claims were not precluded by *res judicata* and *collateral estoppel,* they should be dismissed under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted for a violation under 42 U.S.C. § 1983, false arrest, malicious prosecution or abuse of process. (Dkt. # 22, at 8–14; Dkt. # 27, at 14–21). State Defendants assert that even if plaintiffs' claims were not precluded by *res judicata* and *collateral estoppel,* they are barred by the doctrines of absolute and qualified immunity, and are time-barred. (Dkt. # 25, at 20–23).

## II. DISCUSSION

### A. RULE 12(b) MOTIONS TO DISMISS

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See*

---

**14.** *See* note 1 *supra.*

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Thomas v. City of N.Y.,* 143 F.3d 31, 36–37 (2d Cir.1998). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000) (citation omitted); *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (citation omitted). The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims. *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir.1996) (citation omitted). The Court may consider outside documents which are integral to the Complaint, regardless of whether attached to the Complaint, so long as the pleader has notice of them or refers to them. *See Schnall v. Marine Midland Bank,* 225 F.3d 263, 266 (2d Cir.2000) (citations omitted). In reviewing this motion, the Court is mindful that the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to *pro se* litigants." *Gomes v. Avco Corp.,* 964 F.2d 1330, 1335–36 (2d Cir.1992) (citations omitted).

## B. DEFENDANT HYLAND

Plaintiffs allege that defendant Hyland, while having no factual or reasonable basis for doing so, conspired with defendant Delisa to prosecute criminal proceedings against plaintiff Philip Sullivan with the use of fabricated evidence. (Amended Civil Rights Complaint, Count I, ¶¶ 1–3). Plaintiffs allege that Hyland also conspired with defendants Zigmont and Coffey, who are state inspectors, in order to prosecute groundless charges of eavesdropping against plaintiff Philip Sullivan, pursuant

to CONN. GEN. STAT. § 53a–189. (*Id.,* ¶¶ 4, 8). Plaintiffs claim that defendant Hyland represented to these two defendants that certain items were the personal property of plaintiff Philip Sullivan, which they were not, and made misleading statements of material fact to defendant inspectors, including that plaintiffs had moved out of the home a day or two before Mary Crowell moved out on July 6, 2000, that plaintiffs had lived at the home "rent free" for years, and that they were trying to block Ms. Crowell's sale of the home. (*Id.,* ¶¶ 4–8). Plaintiffs claim that defendant Hyland conspired under color of law to maliciously prosecute and falsely arrest plaintiff Philip Sullivan, thereby violating his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights. (*Id.,* ¶ 9).

In his Motion to Dismiss, defendant Hyland asserts that plaintiffs have previously asserted that he "joined with" and "conspired with" state prosecutors, state investigators and defendant Delisa to deprive plaintiffs of their federal civil rights in *Sullivan III,* and that Judge Kravitz dismissed plaintiffs' claims against defendant Hyland in *Sullivan III* because plaintiffs had not alleged sufficient facts to show that there was a violation of their civil rights. (Dkt. # 27, at 4–5; *see also Judge Kravitz's Ruling,* 2004 WL 1179351, at *13–15). Therefore, defendant Hyland argues that plaintiffs' Amended Civil Rights Complaint against him should be dismissed under the doctrines of *res judicata* and *collateral estoppel,* and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) for failure to establish that defendant Hyland was acting "under color of law." (Dkt. # 27, at 6–13).[15]

---

**15.** Defendant Hyland also adopts defendant Delisa's argument regarding plaintiffs' claims for false arrest and abuse of process, arguing

that plaintiffs failed to state claims for which relief could be granted as to those allegations,

■ With respect to defendant Hyland's arguments under the doctrine of *res judicata* (*Id.* at 6–12):

> The doctrine of *res judicata* holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made.

*Testa v. Geressy*, 286 Conn. 291, 307, n. 23, 943 A.2d 1075 (2008) (quoting *Powell v. Infinity Ins. Co.*, 282 Conn. 594, 600, 922 A.2d 1073 (2007)).

In dismissing all claims against defendant Hyland in *Sullivan III*, Judge Kravitz "dealt exclusively with [p]laintiffs' claims of conspiracy, planting of evidence, 'warrantless' searching of plaintiffs' residence and effects, and [p]laintiffs' claims that defendant Hyland was a state actor or conspirator with state actors." (Dkt. # 27, at 9; *Judge Kravitz's Ruling*, 2004 WL 1179351, at *13–15.) Defendant Hyland asserts that all of these claims against him were "considered and rejected" in *Sullivan III*[16], and that "[p]laintiffs are alleging the

same things as alleged in *Sullivan III*. . . ." (Dkt. # 27, at 9). Further, defendant Hyland points out that while plaintiffs' claim of false arrest *is* a new claim in that it was not a claim asserted in *Sullivan III*, it should also be dismissed under the doctrine of *res judicata* because plaintiffs "could have and should have made these allegations in *Sullivan III* . . . but failed to do so." (Dkt. # 27, at 10).

Plaintiffs respond by asserting that because *Sullivan III* is currently pending on appeal before the Second Circuit, this Court is without jurisdiction to consider any of the issues raised by any defendant's motion to dismiss in relation to *Sullivan III*. (Dkt. # 28, at 5). Plaintiffs also argue that *res judicata* is an affirmative defense rather than grounds for a motion to dismiss. (*Id.* at 11–12). Finally, plaintiffs argue that their claims for "retaliatory and malicious prosecution," "false arrest," and "continuing abuse of criminal process" have never been litigated in any prior action brought by plaintiffs because they were not actionable at the time that the 2003 complaint was filed in *Sullivan III*. (*Id.*, at 4, 11–16). Plaintiffs further claim that they attempted to amend their 2003 Complaint to include these three claims, but their attempt was denied by Judge Kravitz. (*Id.* at 11; *see Judge Kravitz's Reconsideration Ruling*, 2007 WL 1114028).[17]

---

and that these claims are time barred. (Dkt. # 27, at 21; *see also* Dkt. # 22, at 11–14).

16. Judge Kravitz expressly held that plaintiffs "do not make even a de minimis showing in their Amended Complaint that there was an agreement between Mr. Hyland and Inspector Zigmont to work in concert to deprive the Sullivans of their constitutional rights . . . [and] there are no allegations that would permit the Court to treat the Hyland's . . . actions as attributable to the State itself." *Judge Kravitz's Ruling*, 2004 WL 1179351, at *14 (citation omitted).

17. In denying plaintiffs' motion, Judge Kravitz held that:

> [B]ecause this Court gave [p]laintiffs a final deadline of September 30, 2005, for the filing of their second amended complaint, and because the [p]laintiffs have not alleged or demonstrated any good cause for amending the complaint at this time, and further because the [p]laintiffs have already been given ample opportunity, which they have exercised numerous times, to amend their complaint in the nearly four years that this case has been pending, the Court DENIES [p]laintiffs' Motion.

In response, defendant Hyland asserts that plaintiffs' attempts to amend their 2003 Complaint to allege these claims were made on or after September 26, 2005, nearly sixteen months after Judge Kravitz dismissed the 2003 Complaint against Hyland and others in *Sullivan III*. (Dkt. #33, at 2). Defendant Hyland further argues that the fact that *Sullivan III* is on appeal does not limit the preclusive effect of the court's dismissal in *Sullivan III*. (*Id.*). Finally, defendant Hyland contends that while it is true that *res judicata* can be an affirmative defense, it can be raised in a motion to dismiss under Rule 12(b)(6) where a defendant raises claim preclusion. (*Id.*) Here, defendant Hyland points out that plaintiffs had referenced plaintiff Philip Sullivan's arrest as "the fruit of the unconstitutional search and seizure engaged in by the private party defendants" in *Sullivan III*, and that in this case, plaintiffs merely add the arrest as a violation of his constitutional rights and add the claims of false arrest, abuse of process and retaliatory and malicious prosecution. (*Id.* at 4). Defendant Hyland asserts that "it is the *factual* predicate of the several claims asserted that determine whether *res judicata* will apply, not a litigant's ability to devise a new legal theory" and that the *factual* predicates for plaintiffs' claims existed before they filed their 2003 Complaint in *Sullivan III*. (*Id.*) (internal alteration omitted & emphasis in original) (citing *Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir.1990)).

█ Defendant Hyland is correct that *res judicata* can be raised in a Rule 12(b)(6) Motion to Dismiss. The Second Circuit has held that "[t]he affirmative defense of *res judicata* may be raised in a Rule 12(b)(6) motion 'when all of the relevant facts are shown by the court's own records.' Principles of *res judicata* pro-

hibit the litigation of a claim that has already been decided on the merits." *Freeman v. Sikorsky Aircraft Corp.*, 151 Fed.Appx. 91, 92 (2d Cir.2005) (citations omitted). Furthermore, "[t]he Connecticut Supreme Court ... has held a trial court judgment to be final, despite a pending appeal, when the issue was the applicability of the rules of *res judicata.*" *World Wrestling Entm't, Inc. v. THQ, Inc.*, No. X05 CV 065002512S, 2008 WL 4307568, at *4 (Conn.Super. Aug. 29, 2008) (citing *Enfield Federal Savings & Loan Ass'n. v. Bissell*, 184 Conn. 569, 573, 440 A.2d 220 (1981) (other citation omitted)). Therefore, the pending appeal in *Sullivan III* does not preclude application of *res judicata* at this juncture.

The Second Circuit has laid out a three-prong test for applying the doctrine of *res judicata:* "(1) the previous actions involved final adjudication on the merits; (2) the previous actions involved the same parties ...; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir.2001) (citations omitted). *Sullivan III* is the relevant previous action which has already been adjudicated on the merits, and must be analyzed under this three-prong test.

As to the first prong of the test, in *Sullivan III*, Judge Kravitz analyzed in considerable detail plaintiffs' claims of violations of their rights under 42 U.S.C. § 1985 and 42 U.S.C. § 1983 as alleged against twenty-one defendants and dismissed both of those claims as against all five of the defendants involved in this suit, constituting a final adjudication on the merits of plaintiffs' claims against defendant Hyland. *See Judge Kravitz's Ruling*, 2004 WL 1179351, at *6–11, 13–15; *Judge Kravitz's Reconsideration Ruling*, 2007

*Judge Kravitz's Reconsideration Ruling*, 2007    WL 1114028, at *1 (emphasis in original).

WL 1114028. Second, as discussed above, *see* Section I *supra, Sullivan III* involved the same plaintiffs and five of the six defendants that are involved in this case, including defendant Hyland.[18] As to plaintiffs' claims of violations of their rights under 42 U.S.C. § 1983, those claims were raised in *Sullivan III*, and Judge Kravitz specifically held that plaintiffs failed to state a claim for which relief could be granted as against defendant Hyland for any violation of plaintiffs' constitutional rights. *Judge Kravitz's Ruling*, 2004 WL 1179351, at *13–15. Plaintiffs' Amended Civil Rights Complaint fails to allege any new facts that evidence state action by defendant Hyland. Therefore, plaintiffs' claims in this case as against defendant Hyland for violations under 42 U.S.C. § 1983 meet the three-prong test in order to be barred under *res judicata*, and are thereby dismissed.

The third and final requisite for the application of *res judicata*—whether the new claims asserted in the instant action could have been raised in *Sullivan III*—is the one that plaintiffs contest. (*See* Dkt. # 28, at 4). As the Second Circuit explained in *Pike:*

> Whether a claim that was not raised in the previous action could have been
>> raised therein, depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims. To ascertain whether two actions spring from the same "transaction" or same "claim," [a court] look[s] to whether the underlying facts are "related in time, space, origin,

or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

266 F.3d at 91 (citations omitted). Plaintiffs argue that they were unable to bring their claims for false arrest and retaliatory and malicious prosecution in *Sullivan III* because "they were not actionable at that time according to the Second Circuit and the U.S. Supreme Court." (Dkt. # 28, at 4). Plaintiffs' assertion is simply incorrect. "[I]n Connecticut, a false arrest claim cannot lie when the challenged arrest was supported by probable cause." *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir.) (citation omitted), *cert. denied*, 552 U.S. 818, 128 S.Ct. 109, 169 L.Ed.2d 24 (2007). Under Connecticut law, "[p]robable cause ... comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred." *State v. Barton*, 219 Conn. 529, 548, 594 A.2d 917 (1991)(internal quotation marks & citations omitted). In *Sullivan III*, after careful consideration of plaintiffs' claims, Judge Kravitz found that there was sufficient truthful information in the affidavit supporting the arrest warrant application to support a finding of probable cause. *See* 487 F.Supp.2d at 81. Therefore, the reason plaintiffs were unable to bring claims for false arrest in *Sullivan III* is due to the fact that they failed to meet their burden of proving a lack of probable cause.[19] Furthermore, plaintiffs' claim

---

18. *See* note 12 *supra.*

19. As to plaintiffs' claims for "retaliatory and malicious prosecution," a plaintiff bringing such claim under Connecticut law must prove that the criminal proceedings complained of have terminated in favor of the plaintiff. *See*

*McHale v. W.B.S. Corp.*, 187 Conn. 444, 447, 446 A.2d 815 (1982) (multiple citations omitted). However, "in the absence of exculpatory facts which became known after an arrest, probable cause to arrest is a complete defense to a claim of malicious prosecution." *D'Angelo v. Kirschner*, 288 Fed.Appx. 724, 726 (2d

against defendant Hyland for false arrest, abuse of process and retaliatory and malicious prosecution arise from plaintiff Philip Sullivan's arrest in 2001—the same arrest that prompted plaintiffs' claims in *Sullivan III*, thereby satisfying the test for barring plaintiffs' new claims under the doctrine of *res judicata.* Finally, even if plaintiffs' new claims for false arrest, abuse of process and retaliatory and malicious prosecution as against defendant Hyland were *not* barred by *res judicata*, they would be dismissed under Rule 12(b)(6) for the same reason that plaintiffs' claims against defendant Hyland were dismissed in *Sullivan III*—failure to state a claim upon which relief can be granted—because defendant Hyland was not the person who arrested or prosecuted plaintiff Philip Sullivan, and because plaintiffs fail to allege sufficient facts to demonstrate any state action by defendant Hyland. *See Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir.2006). Therefore, plaintiffs' new claims for false arrest, abuse of process, and retaliatory and malicious prosecution as asserted against defendant Hyland are also barred under the doctrine of *res judicata.*[20]

### C. DEFENDANT DELISA

■ Plaintiffs' allegations against defendant Delisa mirror the allegations asserted against defendant Hyland. Plaintiffs allege that defendant Delisa conspired with defendant Hyland and State Defendants to use her political connections to prosecute criminal proceedings against plaintiff Philip Sullivan with the use of fabricated evidence, thereby depriving plaintiffs of their Fourth and Fourteenth Amendment rights, and depriving plaintiff Philip Sullivan of his First, Fourth, Fifth, Sixth and Fourteenth Amendment guarantees. (Amended Civil Rights Complaint, Count I). All of these claims were asserted against defendant Delisa in *Sullivan III*, but plaintiffs now add the same new claims of false arrest, abuse of process, and retaliatory and malicious prosecution against defendant Delisa as they did against defendant Hyland. (*See Judge Kravitz's Ruling*, 2004 WL 1179351, at *13–15; Amended Civil Rights Complaint, Counts II–III).

Defendant Delisa moves for dismissal because plaintiffs' Amended Civil Rights Complaint fails to state a claim on which relief may be granted due to plaintiffs' failure to allege the elements of a claim of false arrest, malicious prosecution, abuse of process, or any action under 42 U.S.C. § 1983, and because the issues presented by this case have already been fully and fairly litigated and determined against plaintiffs in *Sullivan III*; instead of arguing for dismissal on the basis of *res judicata*, defendant Delisa argues for dismissal on the basis of *collateral estoppel.* (Dkt. # 22, at 6–14; *Judge Kravitz's Ruling*, 2004 WL 1179351, at *13–15). Defendant Delisa argues that plaintiffs' claim for false arrest also fails because it is time barred. (Dkt. # 22, at 12–13).

In response, plaintiffs raise the same arguments they raised against defendant Hyland's Motion to Dismiss, *see* Section II.B *supra.* For the same reasons as stat-

Cir.2008) (citation omitted). Judge Kravitz did not find that any State Defendants in *Sullivan III* lacked probable cause for plaintiff Philip Sullivan's arrest, nor do plaintiffs present this Court with any new evidence to reflect exculpatory facts that have become known to them since plaintiff Philip Sullivan's arrest that would indicate a lack of probable cause.

.

**20.** Because the Court finds that plaintiffs' claims against defendant Hyland are dismissed under the doctrine of *res judicata*, there is no need for the Court to consider defendant Hyland's arguments as to *collateral estoppel.*

ed above, *see* Section II.B *supra,* plaintiffs are mistaken in their claims that (1) the doctrine of *collateral estoppel* is not applicable here because plaintiffs' denied attempt to amend their 2003 Complaint is currently pending before the Second Circuit, and that (2) *collateral estoppel* is not grounds for a motion to dismiss. (Dkt. # 28, at 11–14). As Judge Kravitz previously held:

> Because *collateral estoppel* is a much narrower aspect of *res judicata,* and a pending appeal does not preclude the application of *res judicata,* we conclude that the plaintiff's pending appeal [in a prior action] ... did not preclude the defensive application of collateral estoppel ... [because] [t]he foregoing issues were "actually litigated and determined by a valid and final judgment, and were essential to the judgment." .

*Judge Kravitz's Summary Judgment Ruling,* 487 F.Supp.2d at 65 (citing *LaSalla v. Doctor's Assoc.,* 278 Conn. 578, 587, 898 A.2d 803 (2006) (alterations omitted)).

Defendant Delisa argues that the assertion that she "conspired with others to cause Mr. Sullivan to be investigated and prosecuted for eavesdropping" was previously asserted by plaintiffs in *Sullivan III,* and that Judge Kravitz expressly held that plaintiffs failed to allege sufficient "state action" to support their claims against her for violation of 42 U.S.C. § 1983. (Dkt. # 22, at 6–7; *Judge Kravitz's Ruling,* 2004 WL 1179351, at *13–15). Therefore, Delisa argues that plaintiffs' claims are barred by the doctrine of *collateral estoppel,* and their new claims for false arrest, malicious prosecution and abuse of process "do not relieve [plaintiffs] of the requirement they establish Delisa was acting 'under color of state law'." (Dkt. # 22, at 7).

> Under *collateral estoppel,* or issue preclusion, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. Collateral estoppel will bar the relitigation of an issue of law or fact that was raised, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim.

*Wall v. Union of NA, Laborers' Int'l,* 276 Fed.Appx. 68, 69 (2d Cir.2008) (citations omitted).

It is well established that in *Sullivan III,* plaintiffs' claims against defendant Delisa for violation of their rights under 42 U.S.C. § 1983 were dismissed for plaintiffs' failure to state a claim upon which relief could be granted. *Judge Kravitz's Ruling,* 2004 WL 1179351, at *13–15. Judge Kravitz found that plaintiffs' allegations with respect to another private defendant "amount[ed] to nothing more than general accusations," "without setting forth any facts that would show that [Delisa] was a willful participant in joint activity with the State or its agents." *Id.* at *12 (citation omitted). Judge Kravitz further observed that the Second Circuit "has made it clear that generalized allegations of a conspiracy such as that asserted by the Sullivans are insufficient to state a § 1983 claim against a private defendant." *Id.* (citation omitted). Therefore, the issue of whether defendant Delisa acted under color of law in a conspiracy to deprive plaintiffs of their constitutional rights has been adjudicated and resolved in *Sullivan III.* Plaintiffs' new claims involve adjudication of the same issues adjudicated in *Sullivan III* because claims of false arrest, malicious prosecution and abuse of process are all claims under § 1983 and the Fourth Amendment, and would require a finding that defendant Delisa was "a willful participant in joint activity with the State or its

agents." *Mitchell v. Home*, 377 F.Supp.2d 361, 369 (S.D.N.Y.2005) (citation omitted). Accordingly, the doctrine of *collateral estoppel* bars plaintiffs' claims against defendant Delisa in the present action, as it is designed to protect litigants from the burden of relitigating issues, and to promote judicial economy. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–33, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

### D. STATE DEFENDANTS

■ Plaintiffs allege that private defendants Hyland and Delisa not only conspired with one another to accuse plaintiff Philip Sullivan with the felony of eavesdropping pursuant to CONN. GEN. STAT. § 53a–189, but that they also conspired with the four named State Defendants in this case. (Amended Civil Rights Complaint, Count I). Plaintiffs claim that the State Defendants' actions violated plaintiffs' constitutional rights pursuant to the First, Fourth, Fifth, Sixth and Fourteenth Amendments by conspiring with private defendants to "aid and assist them in promoting their false allegations ... against Philip Sullivan." (*Id.*, Count I, ¶ 4). More specifically, plaintiffs allege that the two defendant inspectors searched plaintiffs' rented premises and possessions in the absence of a lawful warrant or plaintiffs' consent, and failed to "question the veracity and motives of [private defendants]." (*Id.*, Count I, ¶ 6). Plaintiffs also allege that the two defendant Assistant State Attorneys in this case "failed in their duty to institute and follow proper investigative procedures before and after the arrest of Mr. Sullivan." (*Id.*, Count I, ¶ 8a).

As previously indicated, the State Defendants include Assistant State's Attorneys Sonneman and Malone, and Inspectors Coffey and Zigmont. The four state defendants move to dismiss plaintiffs' claims against them in this case, asserting that plaintiffs' claims are barred by the doctrines of *res judicata* and *collateral estoppel*, as well as the doctrines of absolute and qualified immunity. (Dkt. # 25, at 11–21).

As to defendant Sonneman, in *Sullivan III*, plaintiffs alleged her failure to investigate conflicting statements contained in plaintiffs' entry and detainer complaint and statements in the criminal complaint by the State against plaintiff Philip Sullivan, as well as her alleged failure to suspect that probable cause did not exist to support a search warrant to plaintiffs' dwelling, and her alleged requests for continuances in the criminal proceeding against plaintiff Sullivan. *Judge Kravitz's Ruling*, 2004 WL 1179351, at *6. In noting that the "Second Circuit ... requires a court to consider whether the defendant has intertwined his [or her] exercise of authorized prosecutorial discretion with other, unauthorized conduct," Judge Kravitz in *Sullivan III* found that plaintiffs "do not allege any conduct by Assistant State's Attorney Sonneman that could be conceivably regarded as unauthorized," and dismissed all § 1983 claims against defendant Sonneman, in both her individual and official capacities. *Id.* at *7, citing *Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir.2004). In this case, plaintiffs assert the same claims against defendant Sonneman and provide no additional facts in their Amended Civil Rights Complaint to support their allegations. Therefore, the three-pronged test for barring plaintiffs' claims under the doctrine of res *judicata* is met in this case,[21] and plaintiffs' claims

---

21. As required in *Pike*, 266 F.3d at 91, *Sullivan III* involved final adjudication on the merits, *Sullivan III* involved the same parties, and the claims asserted in the instant action could have been raised in *Sullivan III* and in fact *were raised* in *Sullivan III*.

against defendant Sonneman are dismissed.

As to defendant Malone, Judge Kravitz in *Sullivan III* concluded that "[j]oinder of Mr. Malone as a party would be futile since [p]laintiffs have failed to state an actionable claim against him." *Judge Kravitz's Joinder Ruling*, 2005 WL 465425, at *2 (citation omitted). Judge Kravitz concluded that "[p]laintiffs' claims against Mr. Malone are barred by the doctrine of absolute prosecutorial immunity" under which "prosecutors are absolutely immune from suit for claims arising from conduct 'intimately associated with the judicial phase of the criminal process.'" *Id.* at *1 (citing *Imbler v. Pachtman*, 424 U.S. 409, 427–30, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)(other citations omitted)). As State Defendants assert in their brief: "It is important that courts vigilantly apply principles of preclusion because they involve more than the rights and interests of the parties. They also serve important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions." (Dkt. # 25, at 11–12, citing *Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir.2001)). Plaintiffs' claims are barred against defendant Malone under the doctrine of *res judicata* in light of *Judge Kravitz's Joinder Ruling*. As plaintiffs' claims against defendant Malone are identical to those claims brought and dismissed against defendant Sonneman, plaintiffs' claims against defendant Malone are also dismissed under the doctrine of *collateral estoppel.*

■ As to defendant Inspectors Coffey and Zigmont, *Sullivan III* involved claims against them in connection with several alleged conspiracies to violate plaintiffs' constitutional rights under 42 U.S.C. § 1983. Claims against the Inspectors in their official capacity were dismissed due to immunity afforded them under the Eleventh Amendment, which "has been construed more broadly to render states and their agencies immune from suits brought by private parties in federal court." *Judge Kravitz's Ruling*, 2004 WL 1179351, at *9–10 (citations omitted). Subsequently, in February 2005, Judge Kravitz granted plaintiffs' request to amend their 2003 Complaint to allege § 1983 individual capacity claims against Inspectors Zigmont and Coffey. *Judge Kravitz's Reconsideration Ruling*, 2005 WL 465425, at *4. However, in late May 2007, Judge Kravitz granted summary judgment in the Inspectors' favor on all of plaintiffs' federal claims, finding that plaintiffs' claims for constitutional violations caused by the defendant Inspectors to be without merit. *Judge Kravitz's Summary Judgment Ruling*, 487 F.Supp.2d at 73–83. With regard to plaintiffs' Fourth Amendment violation claim, Judge Kravitz held that on the basis of the undisputed facts in the record, on September 29, 2000 and January 22, 2001, the Sullivans did not "have a legitimate expectation of privacy" in Ms. Crowell's residence itself so as to assert a Fourth Amendment violation for defendant inspectors' entry of Ms. Crowell's home. *Id.* at 74–75 (multiple citations omitted). As to plaintiffs' personal property, Judge Kravitz found that the only property "seized" by the State Defendants on September 28, 2000 were the three tapes given to them by defendant Hyland, which plaintiffs had steadfastly denied belonged to them or were made by them, and therefore plaintiffs "[could] not assert that they had any legitimate expectation of privacy in the audiotapes or any basis on which to challenge the Inspector's accepting of them from Mr. Hyland." *Id.* at 76 (citation omitted). Additionally, as to plaintiffs' allegation that the arrest warrant obtained by defendant Inspectors lacked probable cause, Judge Kravitz ruled: "An arrest pursuant to a warrant signed by a neutral

judge or magistrate normally carries a presumption that it was made with probable cause." *Id.* at 80, quoting *Garcia v. Gasparri*, 193 F.Supp.2d 445, 450 (D.Conn. 2002), and held that plaintiffs' claims had "no merit to any of them." *Id.* at 81. He further held that plaintiffs failed to provide any evidence of "an agreement ... to act in concert" in order to prove a § 1983 conspiracy. *Id.* at 83, quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). As to plaintiffs' Fifth and Fourteenth Amendment claims against defendant Inspectors, Judge Kravitz held that because neither defendant Inspector is a federal actor, the Sullivans' Fifth Amendment claims must fail, and that moreover, "the Sullivans have neither claimed that Mr. Sullivan was part of a protected class for the purposes of his equal protection claim, nor have they offered any evidence to suggest that Inspectors Zigmont or Coffey treated them any differently from any other similarly-situated individuals." *Id.* at 83–84. Finally, as to plaintiffs' First Amendment claim, Judge Kravitz found that, "if Mr. Sullivan could prove a causal relationship between the exercise of his First Amendment rights and his criminal investigation, arrest, or prosecution, those actions would qualify as adverse action for purposes [of] his First Amendment claim," but that the Sullivans' claim fails, however, because "there is nothing in the record, even construed in the light most favorable to the Sullivans, that demonstrates either 'improper motivation' on the part of [defendant Inspectors] or that Mr. Sullivan's exercise of his First Amendment rights 'motivated or substantially caused' [the] investigation or Mr. Sullivan's arrest." *Id.* at 85 (citations omitted).

Due to the fact that plaintiffs' federal constitutional claims against defendant Inspectors were thoroughly analyzed and completely disposed of in *Sullivan III*, and because they allege no new claims and because they allege no new facts to support their numerous constitutional claims in this action, plaintiffs' claims against defendant Inspectors are dismissed as barred by the doctrine of *res judicata*, and additionally are barred by the doctrine of *collateral estoppel* because all of these constitutional issues were "actually litigated and determined by a valid and final judgment, and were essential to the judgment." *LaSalla v. Doctor's Assocs., Inc.*, 278 Conn. 578, 587, 898 A.2d 803 (2006) (citation omitted).

■ This Court further recognizes that even if plaintiffs' three new claims in this case were not barred by *res judicata* and/or *collateral estoppel*, their claims for false arrest, malicious prosecution and abuse of process would be dismissed for failure to state a claim upon which relief can be granted. Plaintiffs' claim for false arrest is barred for the same reasons as stated in Section II.B. *supra.* Also, under Connecticut law, the tort of malicious prosecution is the groundless institution of criminal proceedings against a plaintiff. *See McHale v. W.B.S. Corp.*, 187 Conn. 444, 447, 446 A.2d 815 (1982). To assert such claim, plaintiffs would have to demonstrate that "the defendant[s] acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Lee v. Edwards*, 101 F.3d 805, 810 (2d Cir.1996), quoting *McHale*, 187 Conn. at 447, 446 A.2d 815. Furthermore, the Connecticut Supreme Court has held that "the existence of probable cause is an absolute protection against an action for malicious prosecution." *Falls Church Group, Ltd. v. Tyler, Cooper and Alcorn, LLP*, 281 Conn. 84, 94, 912 A.2d 1019 (2007), citing *Brodrib v. Doberstein*, 107 Conn. 294, 296, 140 A. 483 (1928)(internal alteration omitted). Because Judge Kravitz already has found that there was probable cause to arrest plaintiff Philip Sullivan, *Judge Kravitz's Summary Judgment Ruling*, 487

F.Supp.2d at 80–83, defendant Inspectors are protected against an action for malicious prosecution, and plaintiffs' claim is dismissed.

■ As to plaintiffs' claim for abuse of process, in Connecticut, "abuse of process is the misuse of process regularly issued to accomplish an unlawful ulterior purpose." *Shaeffer v. O.K. Tool Co.*, 110 Conn. 528, 532, 148 A. 330 (1930). "[T]he Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of 'a legal process ... against another *primarily* to accomplish a purpose for which it is not designed'." *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 114 (2d Cir.1996)(emphasis in original). Thus, under Connecticut law, the initiation of legal proceedings, even for an improper purpose, does not create a claim for abuse of process. *Id.* (citation omitted). Rather, "liability for abuse of process lies only when the offending party overtly misuses the process *once the proceeding has begun.*" *Id.* (citation omitted)(emphasis added). Because plaintiffs assert no facts to demonstrate that defendants misused the legal process once criminal proceedings against Philip Sullivan had taken place, the Court finds that plaintiffs have failed to assert a claim for which relief can be granted.

### E. STATE LAW CLAIMS

■ In addition to alleging federal claims under § 1983 against the private and State Defendants in this case, plaintiffs assert claims under Article One, Sections 7 and 9 of the Connecticut Constitution. (Amended Civil Rights Complaint, at 1, 3). Having dismissed all federal claims against the private and State Defendants, this Court must determine whether to exercise its discretion to assert supplemental jurisdiction over the remaining state law claims against each of these defendants.

Although 28 U.S.C. § 1367(a) "makes pendent party jurisdiction possible where the claim in question arises out of the same set of facts that give rise to an anchoring federal question claim against another party," *Judge Kravitz's Summary Judgment Ruling*, 487 F.Supp.2d at 88, quoting *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir.2000), a district court may decline to exercise its supplemental jurisdiction over a claim under subsection (a) if "the district court has dismissed all claims over which it has original jurisdiction", or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(3–4). "In exercising its discretion with respect to retaining supplemental jurisdiction, the district court must balance several factors 'including considerations of judicial economy, convenience, and fairness to litigants.'" *Judge Kravitz's Summary Judgment Ruling*, 487 F.Supp.2d at 89, quoting *Correspondent Serv. Corp. v. First Equities Corp. of Fla.*, 338 F.3d 119, 126 (2d Cir.2003). Taking all factors into consideration, the Court concludes that efficiency and fairness would best be served by declining to exercise supplemental jurisdiction over the state law claims against the private and State Defendants because the remaining claims are purely state law claims befitting the expertise and experience of a state court.

### F. PLAINTIFFS' MOTION TO STAY

In their brief, plaintiffs alternatively request that the Court stay this action until the Second Circuit rules on their appeal in *Sullivan III*. (Dkt. # 28, at 16). Such request is *denied.*

### III. CONCLUSION

For the reasons stated above, defendants' Motions to Dismiss (Dkts. # # 21,

24, 26) are **granted** and plaintiffs' Motion to Stay (Dkt. # 28) is **denied.**

*See* 28 U.S.C. § 636(b) **(written objections to ruling must be filed within ten days after service of same)**; FED.R.CIV.P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS*, 892 F.2d 15, 16 (2d Cir.1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated this 21st day of November, 2008 at New Haven, Connecticut.

### RECOMMENDED RULING ON DEFENDANT HYLAND'S MOTION FOR INJUNCTION

The factual and procedural history behind this litigation has been set forth in painstaking detail in the numerous published decisions in *Sullivan v. Delisa,* No. CVN 0091831FA [*"Sullivan I "*]—2002 WL 523076 (Conn.Super.Ct. Jan. 10, 2002)(Crawford, J.); 101 Conn.App. 605, 923 A.2d 760 (Conn.App.Ct.), *certif. denied,* 283 Conn. 908, 928 A.2d 540 (2007); in *In re Mary E. Crowell,* No. AC 27754 [*"Sullivan II "*], *certif. denied sub nom. Sullivan v. Delisa,* 281 Conn. 924, 918 A.2d 274 (2007); in *Sullivan v. Stein,* No. 3:03 CV 1203(MRK) [*"Sullivan III "*]—2004 WL 1179351 (D.Conn. May 21, 2004) (Kravitz, J.); 2004 WL 2750312 (D.Conn. Nov. 18, 2004) (same); 2005 WL 43439 (D.Conn. Jan. 4, 2005) (same); 2005 WL 465425 (D.Conn. Feb. 7, 2005) (same); 2005 WL 977069 (D.Conn. Apr. 19, 2005) (same); 2005 WL 2209301 (D.Conn. Sept. 12, 2005) (same); 2007 WL 1114028 (D.Conn. Apr. 10, 2007) (same); 487 F.Supp.2d 52 (D.Conn.2007) (same); and in this Magistrate Judge's twenty-eight page ruling in this pending action, 08 CV 471(CSH) [*"Sullivan IV "*], filed November 21, 2008 (Dkt. # 39) [*"Sullivan IV Ruling "*]. *See also State v. Sullivan,* No. CR 01106675, 2005 WL 895893 (Conn.Super.Ct. Mar. 11, 2005) (Sheldon, J.).

On October 2, 2008, defendant James Hyland filed the pending Motion for Injunction (Dkt. # 30), in which he moves to enjoin both plaintiffs from filing any new lawsuits against him, or against Kathryn Hyland, Martin Crowell, Jeffrey Stein, or Edward McAnaney. Twenty days later, plaintiffs filed their Motion to Strike (Dkt. # 36), which also serves as their brief in opposition to defendant Hyland's motion. On November 5, 2008, defendant Hyland filed his brief in opposition to plaintiffs' motion (Dkt. # 37), to which plaintiffs filed their reply one week later. (Dkt. # 12).

For the reasons stated below, defendant Hyland's Motion for Injunction (Dkt. # 30) is **granted,** and plaintiffs' Motion to Strike (Dkt. # 36) is **denied.**

### I. PROCEDURAL BACKGROUND

Defendant Hyland now moves this Court to enjoin plaintiffs from bringing any action in any federal court or state court against him or against Kathryn Hyland, Martin Crowell, Jeffrey Stein or Edward McAnaney. (Dkt. # 30). Defendant Hyland asserts that plaintiffs have brought four meritless lawsuits: *Sullivan I* ended in defendants' favor and was affirmed by the Connecticut Court of Appeals, *Sullivan v. Delisa,* 101 Conn.App. 605, 923 A.2d 760 (Conn.App.Ct.2007), and certification was denied by the Connecticut Supreme Court, 283 Conn. 908, 928 A.2d 540 (2007); *Sullivan II* was dismissed by the Connecticut Appellate Court, and certification was denied by the Connecticut Supreme Court, *Sullivan v. Delisa,* 281 Conn. 924, 918 A.2d 274 (2007); *Sullivan III* is currently on appeal before the Second Circuit after U.S. District Judge Mark R. Kravitz dismissed

all claims in plaintiffs' multiple complaints, *see Sullivan v. Stein,* 487 F.Supp.2d 52 (D.Conn.2007); and finally, this suit, *Sullivan IV,* has resulted in dismissal of all claims against all six defendants, *Sullivan IV Ruling,* where it was found that plaintiffs' claims were barred by the doctrines of *res judicata* and *collateral estoppel,* as well as for plaintiffs' failure to state a claim upon which relief can be granted, pursuant to FED.R.CIV.P. 12(b)(6). In his Motion for Injunction, defendant Hyland now argues that "the litigation brought by the [p]laintiffs over the past eight years, in both federal and state courts, has been nothing but frivolous" and that, "absent an order of this court, there will be a "Sullivan V." (Dkt. # 30, at 5–6).

In response, plaintiffs move to strike defendant Hyland's Motion for Injunction, arguing that, "[i]n order for plaintiffs to be enjoined from exercising their First and Fourteenth Amendment right to their 'day in court' as to defendant Hyland or anyone else ... there must exist several prior lawsuits filed by [p]laintiffs against [d]efendant Hyland found by a court to be 'vexatious' and/or 'frivolous.'" (Dkt. # 36, at 2–3). Plaintiffs further assert that defendant Hyland has not demonstrated that plaintiffs have ever "engaged in litigation which did not have a reasonable basis in law and fact." (*Id.* at 4, 918 A.2d 274). Finally, plaintiffs assert that this court has no personal or subject matter jurisdiction over the named nonparties that defendant Hyland "attempts to piggy-back" onto his Motion for Injunction, as a court's jurisdiction "is limited to those over whom it gets personal service, and who therefore can have their day in court." (*Id.* at 6, 918 A.2d 274)(citing *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832 (2d Cir.1930)(footnote omitted)).

In his reply, defendant Hyland points out that "every one of [plaintiffs'] suits to date has either been dismissed or ended in a judgment for defendants, affirmed on appeal," and that "no court has set a threshold number of meritless or vexatious lawsuits before an injunction may be imposed." (Dkt. # 37, at 2, 3) (citing *Safir v. U.S. Lines, Inc.,* 792 F.2d 19, 24 (2d Cir. 1986), *cert. denied,* 479 U.S. 1099, 107 S.Ct. 1323, 94 L.Ed.2d 175 (1987)). Finally, defendant Hyland asserts that while plaintiffs are correct in their claim that this court cannot enter an injunction against someone who is not a party to this action, plaintiffs *are* parties and therefore, this court does have jurisdiction to enter an injunction against them. (Dkt. # 37, at 4) (emphasis in original).

In their reply brief, plaintiffs respond by asserting that "an 'injunction' merely subjects the 'enjoined' citizen to the forum court's censorship as to the merits of said citizen's complaint," so that "the district judge becomes the attorney for the defendant which is not permitted by either law or equity and said legal service is prejudicial to a[p]laintiff." (Dkt. # 38, at 1–2).

## II. DISCUSSION

The All Writs Act, 28 U.S.C. § 1651(a) provides that, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." "Under the All Writs Act, a district court may sanction a prolific litigant who abuses the judicial process by repeatedly suing defendants on meritless grounds and enjoin him from pursuing future litigation without leave of the court." *Davey v. Dolan,* 453 F.Supp.2d 749, 755 (S.D.N.Y.2006) (citing 28 U.S.C.A. § 1651) (multiple other citations omitted), *aff'd,* 292 Fed.Appx. 127, 127–28 (2d Cir.2008).

"Federal courts have both the inherent power and the constitutional obligation to

protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." (*In re Martin–Trigona,* 737 F.2d 1254, 1263 (2d Cir.1984)). Moreover, "protection of our jurisdiction requires that we shield federal litigants, their counsel, ... and professional associates from ... vexatious litigation in all courts, state or federal." *Id.* at 1263. The Second Circuit has held that in determining whether or not to restrict a litigant's future access to the courts, a district court should consider:

(1) the litigant's history of litigation and in particular, whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, and in particular whether the litigant has a good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Toro v. Depository Trust Co.,* No. 97 CIV. 5383(SAS), 1997 WL 752729, at *4 (S.D.N.Y. Dec. 4, 1997) (quoting *Safir,* 792 F.2d at 24). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.,* 1997 WL 752729, at *4 (S.D.N.Y. Dec.4,1997) (quoting *Safir,* 792 F.2d at 24).

■ The first factor is plaintiff's history of litigation. While a court has yet to describe plaintiff's litigation history as "vexatious," it certainly has included duplicative suits. Plaintiffs have litigated the instant claims in the state courts of Connecticut in two separate actions (*Sullivan I* and *Sullivan II* ), and in Connecticut Federal District Court in two separate actions

(*Sullivan III* and this case, *Sullivan IV*). "When a plaintiff files repeated lawsuits involving the same nucleus of operative facts, a district court has the inherent power to enjoin him from filing vexatious lawsuits in the future." *Lacy v. Principi,* 317 F.Supp.2d 444, 449 (S.D.N.Y.2004)(citing *Malley v. N.Y. City Bd. Of Educ.,* 112 F.3d 69 (2d Cir.1997)). Therefore, this first factor favors defendants.

■ The second factor, plaintiffs' motive in pursuing the litigation, also weighs in favor of defendants. This Court will not speculate as to plaintiffs' motive in pursuing this duplicative litigation, but notes that the plaintiffs' four separate lawsuits have spanned eight years, involved duplicative defendants and claims, and have ended in defendants' favor each time.

The third factor, whether plaintiffs are represented by counsel, weighs in favor of the *pro se* plaintiffs.

■ The fourth factor is whether plaintiffs have caused needless expense to other parties and the courts. It is clear that the six defendants in this case, *Sullivan IV,* have had to incur attorneys' fees and litigation costs associated with defending against plaintiffs' multiple lawsuits against them. Furthermore, plaintiffs' duplicative suits have placed a certain burden on the Courts, which seek to promote judicial economy, by minimizing repetitive litigation and valuing the finality of former judgments. *See Cumberland Farms, Inc. v. Town of Groton,* 262 Conn. 45, 59, 808 A.2d 1107 (2002) (citations omitted).

■ The fifth and last factor, the adequacy of other sanctions to protect the courts and other parties, is a more difficult question. However, it is clear from Plaintiffs' Motion to Strike (Dkt. # 36) that they will continue to refile lawsuits based on the same claims unless they are enjoined from doing so, as plaintiffs refer to defendant's

Motion for Injunction (Dkt. # 30) as "harassing" and state that, the motion "does raise the very serious question as to how many more tortious acts have been committed by [d]efendant Hyland and said named nonparties," and that "[p]erhaps plaintiffs should mirror [d]efendant Hyland's frivolous immaterial motion [filed by his attorney] and seek to enjoin [d]efendant Hyland and non-parties to this action from engaging in further tortious conduct against plaintiffs." (Dkt. # 36, at 6). *See Lacy*, 317 F.Supp.2d at 449–50 (enjoining a plaintiff from re-litigating claims because plaintiff's submissions indicated that he would not stop litigating his claims until he found a judge who agreed with him).

In addition, the Second Circuit has extended such injunctions on a plaintiff's resort to state courts:

It does not follow … that some qualifications relating to the protection of federal interests may not be placed upon [a plaintiff's] resort to state courts. First, while comity usually requires us to abstain from intrusion into state proceedings, a spirit of cooperative federalism calls upon us to alert state courts to [plaintiffs'] past activities so they may take judicial notice of matters relevant to new litigation brought by [them]. Upon remand, therefore, the district court should continue the provisions of the injunction requiring plaintiffs to append pertinent informational materials to pleadings in state courts.

*In re Martin–Trigona*, 737 F.2d at 1263.

Accordingly, plaintiffs are hereby enjoined from instituting any new action, in state or federal court, based on the claims and defendants involved in *Sullivan I, Sullivan II, Sullivan III*, or this present suit, *Sullivan IV*. Additionally, plaintiffs are ordered to attach to their complaint or other initial pleading in any future litigation, *on any subject*, a copy of this Order. *See*

*Satterfeld v. Pfizer, Inc.*, No. 04–CV–3782 (KMW)(GWG), 2005 WL 1765708, at *2 (S.D.N.Y. July 18, 2005), *aff'd mem.*, 208 Fed.Appx. 59 (2d Cir.2006).

### III. CONCLUSION

For the reasons stated above, defendant Hyland's Motion for Injunction (Dkt. # 30) is **granted** until such time, if and when, the Second Circuit returns a decision favorable to plaintiffs in *Sullivan III*. Otherwise, plaintiffs are hereby enjoined from instituting any new action, in state or federal court, based on the claims and defendants involved in *Sullivan I, Sullivan II, Sullivan III*, or this present suit, *Sullivan IV*.

The following requirement is further imposed on plaintiffs with respect to any future litigation filed by plaintiffs—plaintiffs are ordered to attach to their complaint or other initial pleading in any future litigation, *on any subject*, a copy of this Order.

Plaintiffs' Motion to Strike (Dkt. # 36) is **denied.**

*See* 28 U.S.C. § 636(b) (**written objections to ruling must be filed within ten days after service of same**); FED.R.CIV.P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS*, 892 F.2d 15, 16 (2d Cir. 1989) (**failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit**).

Dated this 25th of November, 2008 at New Haven, Connecticut.

### RECOMMENDED RULING ON DEFENDANT DELISA'S MOTION FOR INJUNCTION

Familiarity is presumed with this Magistrate Judge's Recommended Ruling on

Defendants' Motions to Dismiss, filed November 21, 2008 (Dkt. # 39)[1] and Recommended Ruling on Defendant Hyland's Motion for Injunction, filed November 25, 2008 (Dkt. # 40) ["November 25th Recommended Ruling"],[2] in which the factual and procedural history behind this litigation was set forth in painstaking detail. *See also Sullivan v. Delisa*, No. CVN 0091831FA ["*Sullivan I*"]—2002 WL 523076 (Conn.Super.Ct. Jan. 10, 2002) (Crawford, J.); 101 Conn.App. 605, 923 A.2d 760 (Conn.App.Ct.), *certif. denied*, 283 Conn. 908, 928 A.2d 540 (2007); *In re Mary E. Crowell*, No. AC 27754 ["*Sullivan II*"], *certif. denied sub nom. Sullivan v. Delisa*, 281 Conn. 924, 918 A.2d 274 (2007); *Sullivan v. Stein*, No. 3:03 CV 1203(MRK) ["*Sullivan III*"]—2004 WL 1179351 (D.Conn. May 21, 2004) (Kravitz, J.); 2004 WL 2750312 (D.Conn. Nov. 18, 2004) (same); 2005 WL 43439 (D.Conn. Jan. 4, 2005) (same); 2005 WL 465425 (D.Conn. Feb. 7, 2005) (same); 2005 WL 977069 (D.Conn. Apr. 19, 2005) (same); 2005 WL 2209301 (D.Conn. Sept. 12, 2005) (same); 2007 WL 1114028 (D.Conn. Apr. 10, 2007) (same); 487 F.Supp.2d 52 (D.Conn.2007); *State v. Sullivan*, No. CR 01106675, 2005 WL 895893 (Conn.Super.Ct. Mar. 11, 2005) (Sheldon, J.).

On December 29, 2008, defendant Mary Ann Delisa filed the pending Motion for Injunction (Dkt. # 50), in which she moves to enjoin both plaintiffs from filing any new lawsuits against her and her husband Thomas Delisa.[3] The next day, plaintiffs filed their Motion to Strike (Dkt. # 48), which also serves as their brief in opposi-

tion to defendant Delisa's motion. On January 20, 2009, defendant Delisa filed her brief in opposition to plaintiffs' motion (Dkt. # 53), to which plaintiffs filed their reply nine days later. (Dkt. # 54).

For the reasons stated below, defendant Delisa's Motion for Injunction (Dkt. # 30) is **granted**, and plaintiffs' Motion to Strike (Dkt. # 36) is **denied.**

## I. DISCUSSION

Defendant Delisa discusses the five factor test found in *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir.1986), which factors were addressed in the November 25th Recommended Ruling (at 4–6), and which factors were all found in defendants' favor. Plaintiffs' first filing largely recycles the same arguments made in opposing defendant Hyland's similar motion, namely that "[t]here is **no evidence** that Plaintiffs have engaged in repetitive frivolous vexatious lawsuits as to Defendant Delisa ..." (Dkt. # 48, at 3–8 (emphasis in original); *cf.* Dkt. # 36, at 3–6). In her reply brief, defendant Delisa responds that the "evidence" in support of the injunction are all the court rulings in *Sullivan I, Sullivan II, Sullivan III* and *Sullivan IV*, and "[w]hile it is true that with this case ... plaintiffs have alleged different common law tort theories, the predicate for the new theories is not different from that before the court in *Sullivan III*: an alleged conspiracy by [defendant] Delisa and others to deprive plaintiffs of their constitutional rights," and the "critical facts and events" of all

---

1. Plaintiffs' Objection to this Recommended Ruling is pending before Senior U.S. District Judge Charles S. Haight. (Dkts. ## 41–42; *see also* Dkts. ## 44–47, 52).

2. Plaintiffs' Objection to the November 25th Recommended Ruling also is pending before Senior U.S. District Judge Charles S. Haight. (Dkt. # 43; *see also* Dkt. # 51).

3. The November 25th Recommended Ruling granted such relief, as requested by defendant James Hyland, with respect to any new litigation against him, Kathryn Hyland, Martin Crowell, Jeffrey Stein and Edward McAnaney. (At 2).

four *Sullivan* lawsuits form a "nucleus of facts' common to all four ... lawsuits." (At 1) (emphasis added).[4] In their reply brief, plaintiffs contend that from July 2000 through April 1, 2005, they have been *"the victims of shocking ongoing unlawful acts "* by defendant Delisa and others, that "at no time have Plaintiffs engaged in either frivolous or vexatious lawsuits," and that when they have their "due process hearing," it will be "clearly reveal[ed] that it is the Defendants who are reckless prolific violators of the law and to date have been protected by the culture of corruption in Connecticut." (Dkt. # 54, at 2) (emphasis in original).

For all the reasons addressed in the November 25th Recommended Ruling (at 2–7), plaintiffs are hereby enjoined from instituting any new action, in state or federal court, based on the claims and defendants involved in *Sullivan I, Sullivan II, Sullivan III,* or this present suit, *Sullivan IV.* Additionally, plaintiffs are ordered to attach to their complaint or other initial pleading in any future litigation, *on any subject,* a copy of this Order. *See Satterfeld v. Pfizer, Inc.,* No. 04–CV–3782 (KMW)(GWG), 2005 WL 1765708, at *2 (S.D.N.Y. July 18, 2005), *aff'd mem.,* 208 Fed.Appx. 59 (2d Cir.2006).

## II. CONCLUSION

For the reasons stated above, defendant Delisa's Motion for Injunction (Dkt. # 50) is *granted* until such time, if and when, the Second Circuit returns a decision favorable to plaintiffs in *Sullivan III.* Otherwise, plaintiffs are hereby enjoined from instituting any new action, in state or federal

court, based on the claims and defendants involved in *Sullivan I, Sullivan II, Sullivan III,* or this present suit, *Sullivan IV.*

The following requirement is further imposed on plaintiffs with respect to any future litigation filed by plaintiffs—plaintiffs are ordered to attach to their complaint or other initial pleading in any future litigation, *on any subject,* a copy of this Order.

Plaintiffs' Motion to Strike (Dkt. # 48) is *denied.*

*See* 28 U.S.C. § 636(b) (**written objections to ruling must be filed within ten days after service of same**); FED.R.CIV.P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS,* 892 F.2d 15, 16 (2d Cir.1989) (**failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit**).

Dated this 6th day of February, 2009 at New Haven, Connecticut.

---

4. Defendant Delisa also recounts yet an additional lawsuit, *Phillip Sullivan v. Thomas Delisa et al.,* Dkt. No. CV 03–0523045S, in the New Britain Superior Court, involving a bank account, and not the Farmington home; in this lawsuit, filed in 2003, plaintiffs alleged that defendant Delisa's husband, and others,

"wantonly and recklessly conspired" with a bank to deprive plaintiff Thomas Sullivan of funds in this account. (At 2–3). According to defense counsel, Superior Court Judge Robinson successfully solved the matter, with a voluntary resolution and withdrawal placed on the record in open court. (At 3).